IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
JACOB DOE,                         )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )    1:24-cv-41
                                   )
THE UNIVERSITY OF NORTH            )
CAROLINA SYSTEM, et al.,           )
                                   )
        Defendants.                )
```

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Before this court is a Motion for a Preliminary Injunction filed by Plaintiff Jacob Doe. (Doc. 4.) For the reasons discussed herein, Plaintiff's motion will be denied.

I.   **FACTUAL BACKGROUND**

Plaintiff enrolled as an undergraduate student at the University of North Carolina at Chapel Hill ("UNC-CH") in August 2022. (Verified Compl. ("Compl.") (Doc. 1) ¶¶ 1, 25.)[1] Plaintiff is male. (See id. ¶ 317.) On or about September 1, 2022,

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

Plaintiff and a female student ("Jane Roe" or "Roe") engaged in a sexual encounter[2] on UNC-CH's campus. (Id. ¶¶ 2, 154-163.)

"On March 9, 2023, in a meeting with [Equal Opportunity and Compliance Office ('EOC')] investigators, Roe alleged that Plaintiff engaged in possible violations of [UNC-CH's] Title IX and [Policy on Prohibited Discrimination, Harassment, and Related Misconduct ('PPDHRM')] policies." (Id. ¶ 202.) Roe alleged Plaintiff

> (1) recklessly and/or knowingly exposed [her] to a sexually transmitted infection without her knowledge; (2) penetrated [her] vagina with his penis without her consent; and (3) placed [her] hand on his penis without her consent.

(Id. ¶ 207.)

"On March 24, 2023, the EOC issued a notice of charges and investigation based on Roe's allegations." (Id. ¶ 206.) "The first charge was a violation of the [PPDHRM]; the second and third charges were violations of the Title IX Policy. The EOC determined that all three of the charges would be investigated

---

[2] Plaintiff challenges UNC-CH's determination that he was responsible for sexual misconduct as a result of this encounter, but "this Court does not sit as a super-school disciplinary appeal board." Doe v. Wake Forest Univ., No. 1:23-CV-00117, 2023 WL 2239475, at *4 (M.D.N.C. Feb. 27, 2023). The court's task here is not to decide whether that determination "was 'correct,' but rather much more specifically to decide if the University violated any Federal law in its discipline of the Plaintiff." Id.

and adjudicated under the Title IX Policy and Procedures." (Id. ¶ 208.)

UNC-CH investigated the charges and the EOC issued an investigative report. (Id. ¶¶ 213-18.) A hearing based on the investigation and its findings was held on September 11, 13, and 19, 2023. (Id. ¶ 221.) "The Hearing Officer found Plaintiff responsible for sexual misconduct and not responsible for exposing Roe to an STI. The Hearing Officer suspended Plaintiff for one full academic year. The university's Appeals Officer denied Plaintiff's appeal." (Id. ¶ 222.)

Plaintiff alleges that several procedural irregularities took place during the course of the investigation and hearing. For example, Plaintiff alleges that he was denied the opportunity to cross-examine Roe at the hearing, (id. ¶¶ 225-28), and was not permitted to file his own formal complaint against Roe for recklessly exposing him to a sexually transmitted infection based on the same conduct as Roe's formal complaint, (id. ¶¶ 209-12). Plaintiff also alleges that the Hearing Officer's conclusions were not properly based on facts in the record. (Id. ¶¶ 230-43).

## II. **PROCEDURAL HISTORY**

Plaintiff filed a Verified Complaint, (Verified Compl. ("Compl.") (Doc. 1)), a Motion for Leave to Proceed

Pseudonymously, (Mot. for Leave to Proceed Pseudonymously (Doc. 2)), and a Motion for an Ex Parte Temporary Restraining Order and Motion for a Preliminary Injunction, (Mot. for Ex Parte TRO and Mot. for Prelim. Inj. ("Mot. for TRO and PI") (Doc. 4)), on January 17, 2024. On January 24, 2024, the court entered a Temporary Restraining Order, (Doc. 8), granting Plaintiff's motion for a temporary restraining order "with respect to Plaintiff's request that UNC-CH not disclose his name in response to a public records request," (id. at 2). The court heard oral argument from the parties on the merits of the motion for preliminary injunction on February 26, 2024. (See Docket Entry 2/26/2024.) At oral argument, the court denied Plaintiff's motion for preliminary injunction but ordered that "Defendants are prohibited from releasing or disclosing any information concerning the disciplinary proceedings that are the subject of this lawsuit" under the All Writs Act. (See id.)

### III. **ANALYSIS**

To obtain a preliminary injunction, a plaintiff must establish four prongs: "that [1] he is likely to succeed on the merits, that [2] he is likely to suffer irreparable harm in the absence of preliminary relief, that [3] the balance of equities tips in his favor, and that [4] an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7,

- 4 -

Case 1:24-cv-00041-WO-LPA   Document 20   Filed 03/14/24   Page 4 of 11

20 (2008). "Courts considering whether to impose preliminary injunctions must separately consider each Winter factor." Di Biase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017). A preliminary injunction "is an extraordinary remedy intended to protect the status quo and prevent irreparable harm during the pendency of a lawsuit," and the moving party bears the burden of "clearly establish[ing] entitlement to the relief sought." Id.

A plaintiff seeking a preliminary injunction "need not establish a 'certainty of success,' but must make a clear showing that he is likely to succeed at trial." Di Biase, 872 F.3d at 230 (citation omitted). "[T]he burden placed upon Plaintiff[] to show that each requirement of a preliminary injunction is met is high. Consequently, merely 'providing sufficient factual allegations to meet the [Fed. R. Civ. P.] 12(b)(6) standard of Twombly and Iqbal' does not show a likelihood of success on the merits." J.O.P. v. U.S. Dep't of Homeland Sec., 338 F.R.D. 33, 60 (D. Md. 2020) (citation omitted). The parties focused solely on Plaintiff's Title IX claim in their briefing and at oral argument, therefore this court will only address the likelihood of Plaintiff's success as to his Title IX claim.

Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in . . . or be

subject to discrimination under any education program or activity receiving Federal Financial assistance." 20 U.S.C. § 1681(a). To establish a claim under Title IX, a plaintiff must establish "causation — that is, a causal link between the student's sex and the university's challenged disciplinary proceeding. Not just any causal link will suffice . . . . [T]he language requires 'but-for' causation." Sheppard v. Visitors & Rectors of Va. State Univ., 993 F.3d 230, 236 (4th Cir. 2021).

Plaintiff bases his Title IX claim on the theory that UNC-CH's disciplinary proceedings yielded an "erroneous outcome" "motivated by gender bias." (Pl's Br. in Supp. of Mot. for TRO and Prelim. Inj. ("Pl.'s Br.") (Doc. 5) at 11; see also Compl. (Doc. 1) ¶ 300.)

To state a claim under Title IX, Plaintiff must allege Defendant discriminated against him on the basis of sex. Sheppard, 993 F.3d at 236. Under the "erroneous outcome" theory, a plaintiff must show "(1) 'particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding' and (2) 'particular circumstances suggesting that gender bias'" was the but-for cause of the erroneous outcome. Doe v. Maryland, No. ELH-20-1227, 2021 WL 1174707, at *22 (D. Md. Mar. 29, 2021) (quoting Yusuf v. Vassar Coll., 35 F.3d 709, 715 (2d Cir. 1994)); Sheppard, 993 F.3d at

236 ("[I]nherent in this approach is a requirement that a Title IX plaintiff adequately plead causation — that is, a causal link between the student's sex and the university's challenged disciplinary proceeding.").

"The first element can be satisfied by (1) pointing to procedural flaws in the investigatory and adjudicative process, (2) identifying inconsistencies or errors in the findings, or (3) challenging the overall sufficiency and reliability of the evidence." Doe 2 ex rel. Doe 1 v. Fairfax Cnty. Sch. Bd., 384 F. Supp. 3d 598, 607 (E.D. Va. 2019), aff'd, 832 F. App'x 802 (4th Cir. 2020). The second element can be satisfied by "statistical evidence of gender bias in the University's decision making, policies and procedures that are designed to reach gender-specific outcomes, and/or statements by university officials evidencing gender bias." Doe v. Marymount Univ., 297 F. Supp. 3d 573, 586 (E.D. Va. 2018).

"But merely identifying mistakes or imperfections in an investigation does not suffice to raise a plausible inference of sex discrimination." Frierson v. Shaw Univ., --- F. Supp. 3d ---, 2023 WL 3571924, at *4 (E.D.N.C. May 19, 2023) (citing Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 291–92 (1998); see Doe v. Samford Univ., 29 F.4th 675, 688 (11th Cir. 2022) (plaintiff not entitled to inference of sex discrimination from

- 7 -

alleged deficiencies in investigation). "Moreover, evidence that a university credits an alleged victim's statements and supporting evidence during a Title IX investigation does not constitute sex-based bias or discrimination." Frierson, 2023 WL 3571924, at *4 (collecting cases).

Plaintiff raises multiple specific allegations about what he characterizes as procedural defects resulting from gender bias against him. These include "[t]he withholding of information and evidence from Plaintiff," "[r]eliance on demonstrably false allegations," refusing to investigate or charge Roe with exposing Plaintiff to an STI while maintaining that same charge against Plaintiff, "[p]rohibiting Plaintiff from cross-examining his accuser (Roe) on facts directly relevant to her credibility," "[p]rohibiting Plaintiff from presenting evidence concerning responses to sexual assault while permitting the accuser to present evidence explaining her own incongruous conduct," and several others. (See Pl.'s Br. (Doc. 5) at 13–15.) Though Plaintiff plausibly alleges that he was subjected to several procedural irregularities throughout the course of UNC-CH's Title IX process, Plaintiff's allegations "fall short of clear evidence that [he] is likely to prove at trial that the alleged errors made by the Hearing Officer and Appeals Officer were the result of gender bias." Doe v. Wake

- 8 -

Forest Univ., No. 1:23-CV-114, 2023 WL 2239475, at *7 (M.D.N.C. Feb. 27, 2023).

Plaintiff fails to identify any direct evidence of gender bias. He does not allege any specific comments or statements made by UNC-CH administrators that could create an inference of gender bias. Cf. Doe v. Marymount Univ., 297 F. Supp. 3d 573, 585 (E.D. Va. 2018) (holding comment by plaintiff's adjudicator revealed the adjudicator adhered to gender-biased beliefs in connection with a later sexual assault investigation).

As indirect evidence of gender bias, Plaintiff provides a history of UNC-CH's recent Title IX program changes and external influences, including the national media scrutiny UNC-CH has received in the past decade regarding its poor responses to Title IX complaints. (Compl. (Doc. 1) ¶¶ 301–61.) Plaintiff also alleges facts about the Department of Education's investigation of UNC-CH, the resulting Title IX violations it found, and the fine UNC-CH paid as a result. (Id. ¶¶ 364–71.) However, Plaintiff does not specifically allege that this context results in UNC-CH implementing, practicing, or permitting a gender-biased Title IX adjudication process presently or as to him specifically. See Wake Forest Univ., 2023 WL 2239475, at *7.

Instead, UNC-CH's Title IX policies state that Title IX administrators "must not have a conflict of interest or bias for

or against Reporting Parties or Responding Parties generally or an individual Reporting Party or Responding Party; must not rely on sex stereotypes; and must promote impartial investigations and adjudications of Formal Complaints of Sexual Harassment. Further, these individuals must receive training on: . . . how to conduct an investigation and grievance process including hearings, appeals, and informal resolution processes as applicable; and how to serve impartially, including avoiding prejudgment of the facts at issue, conflicts of interest, and bias." (Compl. (Doc. 1) ¶¶ 87–88.)

Though Plaintiff plausibly alleges that he was subjected to several procedural irregularities throughout the course of UNC-CH's Title IX process, he has not shown that these irregularities were because of gender bias. Accordingly, Plaintiff does not demonstrate a likelihood of success on the merits of his Title IX claim. Because Plaintiff fails to show a likelihood of success on the merits, this court will not evaluate the remaining <u>Winter</u> factors.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, **IT IS THEREFORE ORDERED** that Plaintiff's Motion for a Preliminary Injunction, (Doc. 4), is **DENIED**.

- 10 -

Case 1:24-cv-00041-WO-LPA   Document 20   Filed 03/14/24   Page 10 of 11

This the 14th day of March, 2024.

_____
William L. Osteen, Jr.
United States District Judge