# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### CIVIL ACTION NO: 1:24-CV-00041-WO-LPA

JACOB DOE,

        Plaintiff,

    v.

THE UNIVERSITY OF NORTH
CAROLINA SYSTEM, et al.,

        Defendants.

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................1

STATEMENT OF THE CASE.................................................................2

FACTUAL BACKGROUND.....................................................................3

    I.    The Parties ..............................................................................3

        A. Plaintiff Jacob Doe ...............................................................3

        B. The UNC Defendants .............................................................3

        C. The Individual Defendants .....................................................4

    II.    UNC-CH's Title IX Policy and PPDHRM ...............................5

    III.    UNC-CH's Investigation and Discipline of Plaintiff...................6

        A. Plaintiff's Assault of Jane Roe................................................6

        B. UNC-CH's Investigation of Plaintiff for Sexual Misconduct ................8

        C. Plaintiff's Title IX Hearing and Appeal...................................9

QUESTIONS PRESENTED.....................................................................11

STANDARD OF REVIEW ....................................................................12

ARGUMENT .........................................................................................12

    I.    Plaintiff's §1983 Claim Should Be Dismissed...........................13

        A. Sovereign Immunity Bars Plaintiff's §1983 Claim Against the UNC Defendants and Individual Defendants in Their Official Capacities.....14

        B. Plaintiff Failed to Allege a Constitutional Violation. ............................16

           1.  Plaintiff Does Not Identify a Constitutionally Protected Property or Liberty Interest.....................................................16

           2.  Plaintiff Received Due Process.....................................20

C. Qualified Immunity Bars Plaintiff's §1983 Claim Against the Individual Defendants in Their Individual Capacities. ...........................22

II. Plaintiff's Title IX Claim Against UNC-CH Should Be Dismissed. ..........24

A. Plaintiff's Allegations About External Pressures Fail to Show That UNC-CH Discriminated Against Him Because of His Gender. ............25

B. Plaintiff's Allegations About the Investigatory and Adjudicatory Process Fail to Show That UNC-CH Discriminated Against Him Because of His Gender. ..........................................................................28

C. Plaintiff's Conclusory and Generalized Allegations Fail to Show That UNC-CH Discriminated Against Him Because of His Gender. ............33

III. Plaintiff's Breach of Contract Claim Against UNC-CH Should Be Dismissed. ....................................................................................................35

IV. Plaintiff's Negligent Training, Hiring, Supervision, and Retention Claim Against UNC-CH and Hall Should Be Dismissed. .....................................36

V. Plaintiff's NIED Claim Against the Individual Defendants Should Be Dismissed. ....................................................................................................40

VI. Plaintiff's IIED Claim Against the Individual Defendants Should Be Dismissed. ....................................................................................................42

VII. Plaintiff's Tortious Interference with Contract Claim Against UNC-CH and the Individual Defendants Should Be Dismissed. ................................43

VIII. Plaintiff's North Carolina Constitution Claim Against UNC-CH Should Be Dismissed. ..............................................................................................45

CONCLUSION ...............................................................................................46

# INTRODUCTION

After the University of North Carolina at Chapel Hill ("UNC-CH") received a report that Plaintiff Jacob Doe had sexually assaulted fellow student, Jane Roe, Plaintiff was afforded numerous opportunities to be heard. Plaintiff was notified of the three allegations against him. UNC-CH's investigators interviewed and collected evidence from numerous individuals, including Plaintiff. And Plaintiff received a three-day hearing.

UNC-CH's Hearing Officer found that there was sufficient evidence to support two of the three allegations against Plaintiff and imposed a one-academic-year suspension. Specifically, the Officer found that Roe did not consent to two forms of sexual contact with Plaintiff. Unhappy with this split result, Plaintiff appealed to UNC-CH's Appeals Officer, who affirmed.

Dissatisfied again, Plaintiff filed this lawsuit and sought a preliminary injunction to terminate his suspension. That injunction was denied. (ECF 20). Still unhappy, Plaintiff filed a Motion for Reconsideration. (ECF 22). Thereafter, he amended his Complaint. (ECF 33).

Though Plaintiff disagrees with the outcomes reached by UNC-CH and this Court, he has yet to identify any legal basis to change those decisions. Plaintiff has already received exhaustive process to express his dissatisfaction, but dissatisfaction alone is insufficient to support his claims. His Complaint should be dismissed.

1

## STATEMENT OF THE CASE

Plaintiff has sued UNC-CH, UNC-CH's Board of Trustees ("BOT"), the University of North Carolina System ("UNC System"), the UNC Board of Governors ("BOG") (collectively, the "UNC Defendants"), and seven UNC-CH employees (the "Individual Defendants"). (ECF 33, First Amended Complaint "Compl." at 1). Plaintiff has alleged eight claims against these Defendants:

(1)    Violation of 42 U.S.C. §1983 against all Defendants;

(2)    Violation of 20 U.S.C. §1681, Title IX, against UNC-CH;

(3)    Breach of Contract against UNC-CH;

(4)    Negligent Training, Hiring, Supervision, and Retention against UNC-CH and Hall;

(5)    Negligent Infliction of Emotional Distress ("NIED") against the Individual Defendants;

(6)    Intentional Infliction of Emotional Distress ("IIED") against the Individual Defendants;

(7)    Tortious Interference with Contract against UNC-CH and the Individual Defendants; and

(8)    Violation of the North Carolina Constitution against UNC-CH.

(*See* Compl.).

When Plaintiff filed his initial complaint, he also moved for a preliminary injunction, seeking an early end to his suspension. (ECF 4). That motion was denied on March 14, 2024. (ECF 20).

2

On April 11, 2024, Plaintiff moved for reconsideration of that decision, (ECF 22), forecasting that he would amend his complaint to add facts that he relied upon in his motion, (ECF 23 at 4 n.1).

More than two months later, on June 24, 2024, Plaintiff filed an Amended Complaint ("Complaint"), adding some new facts but no additional claims. (ECF 33). Even with these new facts, Plaintiff's Complaint should be dismissed.

## FACTUAL BACKGROUND[1]

### I.     The Parties

The named parties are as follows.

### A. Plaintiff Jacob Doe

In December 2023, Plaintiff was suspended from UNC-CH for one academic year for sexually assaulting fellow student, Jane Roe, in violation of UNC-CH's policies. (Compl. ¶¶222, 245-48). Shortly thereafter, Plaintiff filed this lawsuit naming the four UNC Defendants and seven Individual Defendants.

### B. The UNC Defendants

UNC-CH is a constituent institution of the UNC System. N.C.G.S. §116-4. The UNC System's mission is to develop a "well-planned and coordinated system

---

[1] Defendants dispute many of Plaintiff's alleged facts but assume as true the Complaint's well-pleaded, non-conclusory allegations for their 12(b)(6) Motion. Defendants have also relied on documents outside the Complaint for the reasons stated in their Motion to Dismiss. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

of higher education" for the benefit and service of "North Carolina and its people." *Id.* §§116-1, 116-2.  UNC-CH has a BOT and the UNC System has a BOG.  *Id.* §116-2(1), (2).

### C. The Individual Defendants

Lee Roberts is UNC-CH's Chancellor.[2]  (Compl. ¶14).  There are no allegations about Roberts's conduct, or his predecessor's, with respect to Plaintiff.

Elizabeth Hall is UNC-CH's Associate Vice Chancellor for Equal Opportunity and Compliance ("EOC") and Title IX Coordinator.  (*Id.* ¶15).

Jaclyn Feeney, Beth Froehling, and Jeremy Enlow are EOC Investigators.  (*Id.* ¶¶16-18).  Feeney and Froehling investigated Roe's report that Plaintiff sexually assaulted her.  (*Id.* ¶¶16-17, 213).  Enlow assessed Plaintiff's report that Roe knowingly or recklessly gave him an STI.  (*Id.* ¶¶18, 214).

John Kasprzak served as the Hearing Officer for Plaintiff's UNC-CH hearing.  (*Id.* ¶19).  Kasprzak concluded that Plaintiff violated UNC-CH's policies prohibiting sexual assault.  (*Id.* ¶222).

Karlina Matthews served as UNC-CH's Appeals Officer when Plaintiff appealed Kasprzak's decision.  (*Id.* ¶20).  Matthews affirmed that decision and Plaintiff's one-academic-year suspension.  (*Id.* ¶245).

---

[2] Roberts has been named in his official capacity only.  All other Individual Defendants have been named in their official and individual capacities.  (Compl. at 1).

4

## II. UNC-CH's Title IX Policy and PPDHRM

UNC-CH has two policies that prohibit sexual misconduct, and each is accompanied by procedures for determining whether such misconduct has occurred. (ECF 13-1, Title IX Policy; ECF 13-2, PPDHRM; ECF 13-3, Title IX Procedures).

UNC-CH's Title IX Policy defines "Sexual Assault" to include "Rape: Penetration, no matter how slight, of the vagina . . . with any body part . . . without the Consent of that person." (ECF 13-1 at 2).

UNC-CH's Policy on Prohibited Discrimination, Harassment, and Related Misconduct ("PPDHRM") defines "Sexual Assault or Violence" as "having or attempting to have Sexual Contact with another individual without Consent." (ECF 13-2 at 9). "Sexual Contact" includes "causing another person to touch their own or another's body in [a sexual manner]." (*Id.* at 10).

Both policies define "Consent" as "the communication of an affirmative, conscious and freely made decision by each participant to engage in agreed upon forms of Sexual Contact." (*Id.*; ECF 13-1 at 2). "Consent requires an outward demonstration, through understandable words or actions, that conveys a clear willingness to engage in Sexual Contact." (ECF 13-2 at 10).

Further, "Consent is not to be inferred from silence, passivity, or a lack of resistance, and relying on non-verbal communication alone may result in a violation of this Policy." In other words, "a person who does not physically resist or verbally

5

refuse Sexual Contact may not necessarily be giving Consent." Individuals are not required to "verbally or physically resist unwelcome Sexual Contact for there to be a violation of this Policy." (*Id.*).

## III. UNC-CH's Investigation and Discipline of Plaintiff

The following summarizes the application of these policies to Plaintiff.

### A. Plaintiff's Assault of Jane Roe

On the evening of August 31, 2022, Plaintiff and Roe were both in the dorm room of Friend 1. (Compl. ¶150). Plaintiff and Roe first met about a week earlier at the start of their freshman year. (*Id*. ¶149).

Around midnight, Plaintiff and Roe left Friend 1's dorm and went for a walk. (*Id.* ¶¶153-54). They ended up at Hooker Fields—an outdoor sports field located along South Road on UNC-CH's campus—and began kissing. (*Id.* ¶154). ████

████████████████████████████████████████████

████████████████████ Roe expressed to Plaintiff that she was uncomfortable engaging in such conduct outside where they might be seen. (Compl. ¶155). Plaintiff responded by trying to convince Roe that no one would see them. (*Id.* ¶156). ████████████████

████████████████████████████

Eventually, they were on the ground, (Compl. ¶157), ████████████

████████████████████████████████████████████

6



Plaintiff returned to his dorm around 2:00 AM on September 1, 2022. (Compl. ¶168).

Roe reported to the medical staff that she had "felt pressured" to have sex with Plaintiff and that he was "persistent," (Compl. ¶175),

Roe believed that Plaintiff had given her the STI as she had tested negative for STIs in a series of tests taken about a week earlier. (*See* Compl. ¶¶181, 239-40). Nonetheless, Roe agreed to help Plaintiff get prescription treatment for chlamydia because he was seventeen and feared that his parents would learn of the STI if he sought treatment on his own. (*Id*. ¶¶182-83).

7

**B.** **UNC-CH's Investigation of Plaintiff for Sexual Misconduct**

In November 2022, a UNC-CH employee reported to EOC that Roe had been sexually assaulted on campus. (Compl. ¶200). In February 2023, Roe met with EOC about this report. (*Id.* ¶201). In March 2023, Roe submitted a formal complaint alleging that Plaintiff had sexually assaulted her in violation of UNC-CH's Title IX Policy and PPDHRM. (*Id.* ¶¶202-04).

On March 24, 2023, EOC notified Plaintiff that it was investigating Roe's allegations. (*Id.* ¶206). Specifically, the notice stated that EOC was investigating whether, on or about on August 31, 2022 at Hooker Fields, Plaintiff:

> (1) "recklessly and/or knowingly exposed the Reporting Party to a sexually transmitted infection without her knowledge";
>
> (2) "penetrated the Reporting Party's vagina with his penis without her consent"; and
>
> (3) "placed the Reporting Party's hand on his penis without her consent."

(*Id.* ¶207).

As part of EOC's investigation, Investigators Feeney and Froehling interviewed Plaintiff on April 17, 2023. (Compl. ¶213).

8

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████

On May 8, 2023, Investigator Enlow interviewed Plaintiff about his allegation that Roe had knowingly or recklessly given him chlamydia. (Compl. ¶¶214, 427). Here, unlike Roe's allegations, even if Plaintiff's allegations were true, EOC concluded they were insufficient to support a potential policy violation and thus no separate investigation occurred. (*Id.* ¶¶214, 427-31, 434; ECF 13-3 at 2, §III.B).

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

On August 22, 2023, EOC finalized the Investigation Report. (Compl. ¶218).

█████████████████████████████████████████████████████

████████████████████████████████████████████

**C.     Plaintiff's Title IX Hearing and Appeal**

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████

Officer Kasprzak found Plaintiff responsible for sexual misconduct but did not find Plaintiff responsible for transmitting an STI to Roe. (Compl. ¶222).



10

████████████████████████

████████████████████████

██████

██████████████████████

████████████

On October 23, 2023, Plaintiff appealed Kasprzak's decision to Appeals Officer Matthews. (Compl. ¶244). On December 21, 2023, Officer Matthews affirmed Kasprzak's decision and Plaintiff's suspension became final. (*Id.* ¶¶245, 248; ECF 13-3 at 7, §V.A).

## QUESTIONS PRESENTED

1. Should Plaintiff's §1983 claim be dismissed?

    A. Does Plaintiff's §1983 claim fail because Defendants are immune?

    B. Has Plaintiff failed to plausibly state his §1983 claim?

2. Should Plaintiff's Title IX claim be dismissed?

    A. Has Plaintiff failed to plausibly state his Title IX claim?

    B. Has Plaintiff failed to show that gender was the but-for cause of his alleged injury?

3. Should Plaintiff's state-law claims be dismissed?

    A. Do Plaintiff's state-law claims fail because Defendants are immune?

    B. Has Plaintiff failed to plausibly state his state-law claims?

## STANDARD OF REVIEW

Under Rules 12(b)(1) and 12(b)(2), the plaintiff has the burden of showing that the court has jurisdiction. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (subject-matter jurisdiction); *Mylan Lab'ys, Inc. v. Akzo*, 2 F.3d 56, 60 (4th Cir. 1993) (personal jurisdiction). Questions of sovereign immunity are appropriately resolved under both Rules 12(b)(1) and 12(b)(2). *Aliksa v. N.C.R.R. Co.*, No. 1:17-CV-428, 2018 WL 3466948, at *1 n.1 (M.D.N.C. July 18, 2018).

Under Rule 12(b)(6), a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements . . . supported by mere conclusory statements, do not suffice." *Id.* For a discrimination claim to survive, there must be something to nudge the claim "across the line from conceivable to plausible." *Id.* at 680

## ARGUMENT

Plaintiff's Complaint should be dismissed. Immunity defenses bar nearly all of his claims. And his claims are subject to dismissal for failure to state a claim.

12

## I. Plaintiff's §1983 Claim Should Be Dismissed.[3]

Section 1983 permits damages claims against a "person" who deprives another of their constitutional rights while acting under color of state law. 42 U.S.C. §1983. To state a procedural due-process claim under §1983, Plaintiff must show (1) a constitutionally protected interest, (2) that he was deprived of that interest by state action, and (3) that the procedures employed were inadequate. *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013). Plaintiff cannot meet his burden for at least three reasons.

**First**, the UNC Defendants and Individual Defendants in their official capacities (1) are immune from §1983 claims, and (2) do not meet §1983's statutory definition of "person."

**Second**, Plaintiff (1) has not been deprived of a constitutionally protected interest, and (2) received due process.

---

[3] Though Plaintiff does not allege a standalone conspiracy claim, he references conspiracy alongside his §1983, Title IX, and IIED claims. (Compl. at 55, 67, 123). There is no legal basis for a civil conspiracy claim against Defendants. First, the UNC Defendants and official-capacity Individual Defendants are immune from intentional tort claims, like conspiracy. *Davis v. N.C. State Highway Comm'n*, 271 N.C. 405, 408, 156 S.E.2d 685, 687 (1967). Second, the intracorporate conspiracy doctrine precludes the UNC Defendants from conspiring with their employees, the Individual Defendants. *Fox v. City of Greensboro*, 807 F. Supp. 2d 476, 499 (M.D.N.C. 2011). Third, because Plaintiff's other claims fail, he cannot pursue a claim for conspiracy alone. *Dove v. Harvey*, 168 N.C. App. 687, 690, 608 S.E.2d 798, 800 (2005).

13

**Third**, the Individual Defendants in their individual capacities are entitled to qualified immunity because Plaintiff does not have a clearly established right in his (1) university enrollment, or (2) reputation.

Accordingly, Plaintiff's §1983 claim should be dismissed.

## A. Sovereign Immunity Bars Plaintiff's §1983 Claim Against the UNC Defendants and Individual Defendants in Their Official Capacities.

Plaintiff's §1983 claim against the UNC Defendants and the Individual Defendants in their official capacities fails because (1) it is barred by the Eleventh Amendment, and (2) these defendants are not "persons" under §1983.

**First**, the UNC Defendants and official-capacity Individual Defendants are immune from §1983 claims. "[T]he ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001); *see also Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019). Thus, absent waiver or congressional abrogation, states enjoy immunity from suit in federal court. *See Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 35 (2012).

North Carolina has not waived its immunity from §1983 claims, and Congress has not abrogated that immunity. *Quinn v. N.C. Dep't of Health & Hum. Servs.*, No. 3:19-cv-00391-FDW-DCK, 2020 WL 369290, at *4 (W.D.N.C. Jan. 22, 2020) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66-68 (1989)). This

14

immunity extends to "state agents and state instrumentalities." *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997).

The UNC Defendants are state agents, N.C.G.S. §116-4; *Huang v. Bd. of Govs. of Univ. of N.C.*, 902 F.2d 1134, 1139 (4th Cir. 1990); *McAdoo v. Univ. of N.C.*, 248 F. Supp. 3d 705, 719 (M.D.N.C. 2017), and so too are the official-capacity Individual Defendants, *see Will*, 491 U.S. at 71; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984). Thus, this claim should be dismissed because the UNC Defendants and official-capacity Individual Defendants are immune from §1983 claims. *Jennings v. Univ. of N.C. at Chapel Hill*, 240 F. Supp. 2d 492, 498 (M.D.N.C. 2002).

**Second**, even if Plaintiff could overcome this immunity, his claim still would fail. To state a §1983 claim, Plaintiff "must aver that *a person* acting under color of state law deprived [him] of a constitutional right." *Wahi v. Charleston Area Med. Ctr., Inc.,* 562 F.3d 599, 615 (4th Cir. 2009) (emphasis added).

The UNC Defendants and official-capacity Individual Defendants, as agents of the State, are not "persons" under §1983. *See Googerdy v. N.C. A&T State Univ.*, 386 F. Supp. 2d 618, 625 (M.D.N.C. 2005) (citing *Will*, 491 U.S. at 71); *Bartges v.*

15

*Univ. of N.C. at Charlotte*, 908 F. Supp. 1312, 1332 (W.D.N.C. 1995) *aff'd* 94 F.3d 641 (4th Cir. 1996). Thus, this claim should be dismissed for this reason too.[4]

### B. Plaintiff Failed to Allege a Constitutional Violation.

Plaintiff fails to allege a property or liberty interest necessitating due-process protections and further fails to allege that he was denied due process.

#### 1. Plaintiff Does Not Identify a Constitutionally Protected Property or Liberty Interest.

Plaintiff conclusorily alleges that he has a (1) property interest in continued enrollment, and (2) a liberty interest in his good name and reputation. (Compl. ¶¶265-70). There is, however, no legal support for these assertions.

**First**, "the Supreme Court has only assumed, without actually deciding, that university students possess a constitutionally protectible property right in their continued enrollment in a university." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 239 (4th Cir. 2021) (cleaned up) (quoting *Tigrett v. Rector & Visitors of Univ. of Va.*, 290 F.3d 620, 627 (4th Cir. 2002)). While Plaintiff alleges that it is

---

[4]  To the extent Plaintiff seeks an injunction against Chancellor Roberts in his official capacity under *Ex parte Young*, 209 U.S. 123 (1908), (Compl. ¶¶297-99), he has not sufficiently identified the prospective injunctive relief he seeks because the due-process violations he complains of occurred in the past. *Allen v. Cooper*, 895 F.3d 337, 354-55 (4th Cir. 2018). Further, Plaintiff fails to identify Roberts's connection to the case or authority to provide the relief he seeks. *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 550 (4th Cir. 2014); *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010). Thus, Plaintiff is not entitled to an *Ex parte Young* injunction and the same should be denied because, as explained below, he has failed to allege a constitutional violation.

16

"well established that a person has a protected property interest in pursuing and continuing his education," (Compl. ¶266), no such right is well established as a matter of law, as stated in *Sheppard*.

For a property interest to be subject to procedural due-process protections, it must be "created and defined by a source independent of the Constitution, such as state law." *Huang*, 902 F.2d at 1141 (citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Plaintiff identifies no North Carolina law that gives him a property interest in his UNC-CH enrollment. *Cf. Goss v. Lopez*, 419 U.S. 565, 573 (1975) (relying on Ohio statute to find that suspended high school students had a constitutional interest in their education). Instead, Plaintiff relies on "applicable University conduct policies and procedures" and §700.4.1 of the UNC Policy Manual[5] to create a property right in his enrollment. (Compl. ¶¶271-76). This reliance is misplaced.

In *Sheppard*, the plaintiff similarly argued that university policies and procedures created a protected property interest. 993 F.3d at 239. The Fourth Circuit disagreed: "we have held that mere violations of school procedures are insufficient by themselves to implicate the interests that trigger a federal due process claim." *Id.* (cleaned up); *see also Cash v. Lees-McRae Coll., Inc.*, No. 1:18CV52, 2018 WL

---

[5] The Court can take judicial notice "of matters of public record." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

7297876, at *11-12 (W.D.N.C. Aug. 13, 2018) (finding student code of conduct did create contract right*), report and recommendation adopted*, No. 1:18-CV-00052-MR-WCM, 2019 WL 276842 (W.D.N.C. Jan. 22, 2019), *aff'd,* 811 F. App'x 190 (4th Cir. 2020).

Moreover, nothing in §700.4.1 of the Policy Manual creates a property right. Section 700.4.1 sets forth certain minimum standards for procedural due process that constituent institutions, like UNC-CH, must provide in student conduct disciplinary proceedings. (*See* Compl. ¶273). These minimum procedural standards are then effectuated through constituent institution policies, like UNC-CH's PPDHRM. The creation of such procedures, however, does not create a property interest in enrollment. "[P]rocedural rights in themselves do not create substantive property rights protected by the Fourteenth Amendment." *Jackson v. Long*, 102 F.3d 722, 729 (4th Cir. 1996).

Accordingly, Plaintiff does not have a property interest in his enrollment.

**Second**, Plaintiff claims he has a protected liberty interest in his good name and reputation. The Fourth Circuit "has plainly and repeatedly recognized that an injury to reputation alone does not deprive an individual of a constitutionally protected liberty interest." *Tigrett*, 290 F.3d at 628.

Whether such an interest exists is decided based on the stigma-plus test. *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 309 n.16 (4th Cir. 2006);

18

*see also Paul v. Davis*, 424 U.S. 693, 709 (1976).  To satisfy this test, a stigmatizing statement must be made public such that it damages the plaintiff's reputation. *Sciolino v. City of Newport News*, 480 F.3d 642, 646 (4th Cir. 2007).  And the reputational injury must be "accompanied by a state action that 'distinctly altered or extinguished' [the plaintiff's] legal status." *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 315 (4th Cir. 2012) (quoting *Paul*, 424 U.S. at 711).

Plaintiff cannot satisfy this test.  To begin, Plaintiff's alleged reputational injury occurred long before UNC-CH imposed sanctions.  Indeed, the Complaint states that, "as a result of *Roe's* false allegations against him, Plaintiff has been shunned and cancelled by most, if not all, of his friends and peers at UNC," and "his reputation has been permanently destroyed."  (Compl. ¶3) (emphasis added). Further, Plaintiff has not identified any statement made by Defendants, let alone a public statement, that caused reputational injury.

Even if Plaintiff made this showing, he has not identified any change in legal status that accompanied this injury.  Being a UNC-CH student is not a legal status subject to constitutional protections.  Courts facing claims from similarly situated plaintiffs have dismissed them under Rule 12(b)(6).  *See, e.g.*, *Doe v. Va. Polytechnic Inst. & State Univ.*, 617 F. Supp. 3d 412, 429 (W.D. Va. 2022) ("Without a statutory right to be a public college or university student, Doe cannot show that his status

19

under state law was altered or extinguished."); *Doe v. Univ. of Va.*, 668 F. Supp. 3d 448, 458 (W.D. Va. 2023) (same).  The same result is warranted here.

## 2. Plaintiff Received Due Process.

Additionally, Plaintiff's claim fails because, in the event he has established a constitutionally protected interest, he received due process before he was allegedly deprived of that interest.

Plaintiff alleges that he did not receive sufficient process because Hearing Officer Kasprzak (1) did not permit him to cross-examine Roe, and (2) excluded certain evidence about Roe's and Plaintiff's medical histories.  (Compl. ¶¶225-28.) But neither allegation shows insufficient due process.  *See Doe v. Loh*, No. CV PX-16-3314, 2018 WL 1535495, at *7 (D. Md. Mar. 29, 2018), *aff'd,* 767 F. App'x 489 (4th Cir. 2019) (collecting cases).

Due process requires notice and the opportunity to be heard.  *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976).  This standard is flexible depending on the particular circumstances of the case. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). However, it is clear that an "evidentiary hearing is neither a required, nor even the most effective, method of decisionmaking in all circumstances," and thus "the Supreme Court has recognized that the requirements of due process may be satisfied by something less than a trial-like proceeding." *Henson v. Honor Comm. of U. Va.*, 719 F.2d 69, 73-74 (4th Cir. 1983).

20

In the context of student disciplinary matters, the Fourth Circuit has found that trial-like proceedings with cross-examination are not required. *Butler v. Rector & Bd. of Visitors of Coll. of William & Mary*, 121 F. App'x 515, 520 (4th Cir. 2005). "A school is an academic institution, not a courtroom or administrative hearing room." *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 88 (1978).[6]

Consistent with Title IX and UNC-CH's policies, Plaintiff was notified of the investigation and Roe's allegations on March 24, 2023. (Compl. ¶206). The notice stated that EOC was investigating whether Plaintiff (1) knowingly or recklessly exposed Roe to an STI, (2) penetrated Roe's vagina with his penis without her consent, and (3) placed Roe's hand on his penis without her consent. (*Id.* ¶207).

During the investigation, Plaintiff was interviewed and submitted evidence in his defense. (*Id.* ¶¶213-14). When the investigation was complete, Plaintiff reviewed the draft report and provided comment. (*Id.* ¶¶215-16). And Plaintiff had access to EOC's Final Investigation Report on August 22, 2023, (*id.* ¶218), ███

███████████████████████████

---

[6] This aligns with guidance from the Department of Education when it adopted the 2020 Title IX regulations, stating that it "deliberately decline[d] to adopt wholesale the procedural rules that govern" court proceedings because "colleges, and universities exist first and foremost to provide educational services to students, are not courts of law, and are not staffed with judges and attorneys or vested with subpoena powers." 85 Fed. Reg. 30026, 30051 (May 19, 2020) (codified at 34 C.F.R. §106).

Plaintiff's hearing was then held over the course of three days.  (Compl. ¶221).

████████████████████████████████████████████

████████████████████████████████████

After this lengthy process, Hearing Officer Kasprzak "found Plaintiff responsible for sexual misconduct and not responsible for exposing Roe to an STI" and imposed a one-academic-year suspension.  (*Id.* ¶222).

Even so, Plaintiff still had the opportunity to, and did, appeal the decision to an Appeals Officer. (*Id.* ¶¶222, 244-45).

This shows Plaintiff received notice and several opportunities to be heard, exceeding the requirements for due process.

### C. Qualified Immunity Bars Plaintiff's §1983 Claim Against the Individual Defendants in Their Individual Capacities.

To the extent Plaintiff has identified a constitutionally protected interest, and he was deprived of that interest without due process, his claim still fails because the individual-capacity Individual Defendants have qualified immunity.

Questions concerning qualified immunity should be decided "at the earliest possible stage." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).  This immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

22

Qualified immunity applies unless: (1) "the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," *and* (2) "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). In other words, if the plaintiff fails to establish either factor, qualified immunity bars his claim. *See Est. of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 898 (4th Cir. 2016).

"For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quotation omitted). While a case need not be directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Whether a right is clearly established is a legal question. *See Siegert v. Gilley*, 500 U.S. 226, 233 (1991).

Here, Plaintiff's claim is barred because he had no clearly established right in his (1) university enrollment, and (2) reputation.

**First**, as discussed above, the Fourth Circuit has not recognized a constitutionally protected property right in university enrollment. *Sheppard*, 993 F.3d at 239. Thus, there is no clearly established right to continued enrollment. *See Garrett v. Tomas*, No. 1:21-CV-00110-MR-WCM, 2021 WL 5100964, at *8 (W.D.N.C. Oct. 14, 2021), *report and recommendation adopted,* No. 1:21-CV-

23

00110-MR-WCM, 2021 WL 5099598 (W.D.N.C. Nov. 2, 2021); *see also Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:21-CV-00378, 2023 WL 2188737, at *10 (W.D. Va. Feb. 23, 2023).

**Second**, there is no clearly established right to reputational interests alone. *Tigrett*, 290 F.3d at 628.  Rather, a reputational injury may support a constitutional claim only when there has been a public, stigmatizing statement accompanied by a change in legal status.  *See Jensen v. W. Carolina Univ.*, No. 2:11CV33, 2012 WL 6728360, at *13 (W.D.N.C. Dec. 28, 2012), *aff'd,* 538 F. App'x 359 (4th Cir. 2013). Here, Plaintiff fails to allege any public statement by any Individual Defendant, and there was no change in his legal status.

Accordingly, because there was no violation of a clearly established right, Plaintiff's §1983 claim is barred by the Individual Defendants' qualified immunity.

## II.    Plaintiff's Title IX Claim Against UNC-CH Should Be Dismissed.

Title IX prohibits universities that receive federal funding from discriminating "on the basis of sex." 20 U.S.C. §1681(a).[7]  To state a Title IX claim, Plaintiff must allege facts that "raise a plausible inference that the university discriminated against [him] on the basis of sex."  *Sheppard*, 993 F.3d at 235.  This "requires 'but-for'

---

[7]  By accepting federal funds, UNC-CH waived its immunity from suit in federal court on Title IX claims.  42 U.S.C. §2000d-7(a)(1).

causation," meaning there must be "a causal link between the student's sex and the university's challenged disciplinary proceeding." *Id.* at 236.

Plaintiff fails to show that gender was the plausible, but-for cause of his claimed injury for at least three reasons.

**First**, Plaintiff fails to show how supposed external pressures caused UNC-CH to be biased against him because of his gender.

**Second**, though Plaintiff may disagree with the outcome of UNC-CH's investigatory and adjudicatory process, he fails to show how that process was biased against him because of his gender.

**Third**, Plaintiff cannot rely on conclusory and generalized allegations when he alleges no facts showing UNC-CH was biased against him because of his gender.

For all these reasons, Plaintiff's Title IX claim should be dismissed.

## A. Plaintiff's Allegations About External Pressures Fail to Show That UNC-CH Discriminated Against Him Because of His Gender.

Plaintiff's Title IX claim begins with a lengthy series of allegations asserting that external pressures have made UNC-CH biased against men accused of sexual misconduct. (Compl. at 67-96). In support of this theory, Plaintiff references (1) the 2011 Dear Colleague Letter, (2) investigations by the Department of Education and its Office of Civil Rights, and (3) media reporting. (*See id.*).

25

The same types of external pressures have been rejected by the Fourth Circuit and many other courts as showing gender bias, and Plaintiff fails to tie these pressures to anything he actually experienced at UNC-CH.

**First**, Plaintiff fails to show how the Dear Colleague Letter, which was rescinded in 2017, (Compl. ¶322), had any impact on UNC-CH's process in 2023. For similar reasons, many contemporary courts have rejected the Letter as providing any basis for gender discrimination.

In *Doe v. The Citadel*, the Fourth Circuit concluded that the plaintiff "did not plead facts that would connect the letter to any sex discrimination *in his case*." No. 22-1843, 2023 WL 3944370, at *4 (4th Cir. June 12, 2023). Similarly, the Eleventh Circuit has reasoned that "allegations about a government policy that has been rescinded and replaced do not assist [the plaintiff] in crossing the line between possibility and plausibility." *Doe v. Samford Univ.*, 29 F.4th 675, 692 (11th Cir. 2022) (quotation marks omitted); *see also Loh*, 2018 WL 1535495, at *9.

Here, there are no allegations connecting the Letter to anything Plaintiff experienced at UNC-CH in 2023. Moreover, Plaintiff acknowledges that after the Letter's 2017 recission, the Title IX regulations adopted in 2020 were more favorable to respondents, like him. (Compl. ¶¶328-29).

**Second**, Plaintiff's reliance on a Department of Education program review report from 2017 and a related 2020 settlement with UNC-CH is misplaced. (*See*

26

*id.* at 86-87, 90-94). Notably, the report and settlement involved the Clery Act, not Title IX. (*Id.* ¶¶355-56, 367, 370). And even if they concerned Title IX, Plaintiff's allegations fail to show non-compliance by UNC-CH after the 2020 settlement. Indeed, Plaintiff acknowledges that UNC-CH overhauled its process as part of the settlement, meaning Plaintiff's experience in 2023 had no connection to these earlier events. (*Id.* ¶¶368-74).

Plaintiff also references two Office of Civil Rights complaints filed by female students in 2013. (*Id.* ¶¶334-36). These complaints predate Plaintiff's experience by a decade and allegedly arose from UNC-CH's honor-code process, not a Title IX investigation. (*Id.* ¶336). In any event, in 2018, UNC-CH entered an agreement with OCR to "review and revise its Title IX policies and grievance procedures." (*Id.* ¶364). Thus, here again, Plaintiff's allegations undermine any connection between these events and the process he received years later in 2023.

Moreover, similar allegations have been found insufficient to show gender bias. In *Kashdan v. George Mason Univ.*, the plaintiff attempted to rely on "pressure from the Department of Education" to show gender bias. 70 F.4th 694, 701 (4th Cir. 2023). The Fourth Circuit, however, concluded that such "generalized pressures" did not show bias when the Plaintiff failed to "connect" them to his university's findings against him. *Id.* Similarly, in *Doe v. Stonehill Coll., Inc.*, the First Circuit concluded that the "link" the plaintiff attempted to draw between pending OCR

27

complaints "and his disciplinary proceedings [wa]s too weak to create a plausible inference that sex bias played a role in how the process unfolded."  55 F.4th 302, 335-36 (1st Cir. 2022). The same result should be reached here.

**Third**, Plaintiff's reliance on media reporting and a documentary is equally unavailing.  (Compl. at 77-84).  As above, Plaintiff fails to connect these events, largely occurring from 2013–2015, to anything he experienced in 2023.  And similar allegations about generalized campus pressures, or even the #MeToo movement, have been found insufficient to plausibly show gender discrimination.  *See Kashdan*, 70 F.4th at 701; *Stonehill*, 55 F.4th at 335-36.

Further, none of the reporting Plaintiff points to shows a pro-female, anti-male bias.  Instead, the articles oppose sexual assault regardless of the perpetrator's or victim's gender.  *Doe v. Univ. of Denver*, 952 F.3d 1182, 1198 (10th Cir. 2020) (finding no "bias *on account of gender*" where the plaintiff "adduced only evidence of gender-neutral public pressure").

In sum, Plaintiff fails to show how external pressures on UNC-CH caused the university to enter findings particularly against him *because of* his gender.

### B.  Plaintiff's Allegations About the Investigatory and Adjudicatory Process Fail to Show That UNC-CH Discriminated Against Him Because of His Gender.

Plaintiff contends that EOC's Investigators and UNC-CH's Hearing Officer were biased against him.  But there are no facts to support either assertion.

**First**, Plaintiff's allegations about the investigation fail to reveal gender discrimination. For example, Plaintiff alleges that the investigators asked him questions and sought evidence from him in a manner different than Roe, (Compl. ¶¶393, 395), but he fails to show that this alleged difference in treatment was because of his gender. "[D]eference to Roe, without more, does not show that her treatment -- or Doe's -- is attributable to sex rather than to some other reason, such as Roe's status as the complainant." *Stonehill*, 55 F.4th at 334.

Plaintiff further claims that the investigation into whether he knowingly or recklessly gave Roe an STI was biased, faulting the investigators for seeking physician testimony on the topic. (Compl. ¶394). Here, again, Plaintiff fails to show how, even if he were treated differently than Roe, this was because of his gender. A "pro-complainant, anti-respondent bias . . . is not discrimination 'on the basis of sex.'" *Samford*, 29 F.4th at 690; *see also Univ. of Denver*, 952 F.3d at 1196 ("Most courts . . . have concluded that evidence of a school's anti-respondent bias does not create a reasonable inference of anti-male bias."). █████████████████

██████████████████████████████████████████████████

██████████████████████████

Plaintiff also amended his Complaint to add allegations about Investigator Feeney, asserting that she's biased against men because of her involvement with a nonprofit that helps victims of sexual assault. (ECF 33-1 at 63-65). These new

29

allegations cannot bear the weight Plaintiff places on them. Plaintiff fails to show how Feeney's nonprofit involvement equates to her being biased against all men, let alone that she was specifically biased against Plaintiff because of his gender.

To begin, Plaintiff assumes, without factual support, that because this nonprofit helps sexual assault victims, it primarily helps women, ignoring that all genders may be victims of sexual assault. (Compl. ¶291). And even if this organization did exclusively help women, Plaintiff fails to show how this means Feeney is biased in favor of all women or against all men.[8]

Importantly, the Department of Education rejected such sweeping conclusions when more respondent-friendly Title IX regulations were adopted in 2020. Specifically, the Department declined to create a rule that "particular professional experiences or affiliations" constituted per se bias by an investigator. 85 Fed. Reg. 30026, 30252 (May 19, 2020). In doing so, the Department cautioned against "assuming that all self-professed feminists, or self-described survivors, are biased against men . . . or that prior work as a victim advocate, or as a defense attorney, renders the person biased for or against complainants or respondents." *Id.*

---

[8] Under Plaintiff's thinking, all participants in the POWER Act event hosted by this Court, and more than fifty other district courts, and "[d]esigned to promote pro bono services to empower survivors of domestic violence, dating violence, sexual assault, and stalking," would be gender biased. But that simply isn't plausible.

30

Accordingly, the Department recommended an "objective . . . common sense approach" to making such determinations, bearing in mind that investigators would receive training "to serve impartially and without bias." *Id.* Indeed, Investigator Feeney, and all EOC investigators, received such training. (ECF 13-3 at 4 at; Compl. ¶56). And Plaintiff has not shown that Feeny's nonprofit involvement overrode her training or impaired her ability to conduct an impartial investigation. *See also Doe v. Maryland*, No. ELH-20-1227, 2021 WL 1174707, at *25 (D. Md. Mar. 29, 2021) (concluding that Title IX investigator/attorney was not biased just because she had previously represented someone accused of assault).

**Second**, Plaintiff disagrees with many of Hearing Officer Kasprzak's decisions, including credibility determinations and the ultimate hearing outcome. (Compl. ¶¶399-408). In doing so, Plaintiff appears to believe that his Title IX claim is his chance for a de novo trial. He is mistaken.

To support his claim, Plaintiff must show that Kasprzak's decision-making was motivated by gender bias. ██████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████████ There is nothing in the Notice or Complaint showing that these determinations were made based upon gender. ███████████ ███████████████████████████████████████████████████████

31

████████████████████████████████████ Though Plaintiff disagrees

with these decisions, mere disagreement does not show bias.

Further, even if Kasprzak erred in some way when weighing the evidence or applying UNC-CH's policies, "procedural errors are not inevitably a sign of sex bias." *Stonehill*, 55 F.4th at 334. A "bare assertion" that "procedural irregularities are attributable to . . . sex does not make [such] speculation plausible." *Samford*, 29 F.4th at 688. "Few trials in civil courts are error-free, but appellate courts do not quickly infer that procedural errors in a trial show the judge was biased." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 793 (7th Cir. 2022). There is, likewise, no basis for such an inference here, especially when there are "obvious alternative explanations that suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Samford*, 29 F.4th at 689.

Moreover, in Plaintiff's attempt to paint a one-sided picture of Kasprzak's decision-making, ████████████████████████████████████████ ██████████████████████████████████████████████. This undercuts Plaintiff's narrative and shows an even-handed process that did not favor one side over the other because of gender. *Sheppard*, 993 F.3d at 237 (dismissing Title IX claim where the "referees" made calls against both teams).

Accordingly, Plaintiff fails to show that UNC-CH's investigatory or adjudicatory decisions were reached *because of* his gender.

32

### C. Plaintiff's Conclusory and Generalized Allegations Fail to Show That UNC-CH Discriminated Against Him Because of His Gender.

The Complaint includes a series of conclusory allegations that UNC-CH's process was "gender-biased." (Compl. ¶¶249-56). There are also allegations that "gender bias was a motivating factor" in UNC-CH's findings against and discipline of Plaintiff. (*Id.* ¶¶386, 390). But there are no facts actually showing such bias.

Plaintiff's conclusory allegations are meaningless in the face of clear precedent from the Fourth Circuit stating that "simply reciting the cause of actions' elements and supporting them by conclusory statements does not meet the required standard" for a Title IX claim. *Sheppard*, 993 F.3d at 234; *see also Dillow v. Va. Polytechnic Inst. & State Univ.*, No. 7:22CV00280, 2023 WL 2320765, at *13 (W.D. Va. Mar. 2, 2023)

Plaintiff further alleges "Upon information and belief" that "UNC has engaged in a pattern of unfair investigations and adjudications resulting in serious sanctions being imposed upon male students, while not making comparable efforts with respect to allegations of sexual violence and abusive conduct made against female/non-male students." (Compl. ¶411). But the Fourth Circuit has rejected nearly identical allegations, concluding they were insufficient to show gender bias.

In *Kashdan*, the plaintiff alleged "'upon information and belief' that GMU does not formally investigate female professors accused of sexual-or gender-based harassment at the same frequency as males, and that when GMU does find female

33

professors in violation of its policies, it sanctions them less severely." 70 F.4th 694.
at 701-02. The Court found that these allegations were "far too speculative" to show
gender discrimination, especially when there was no factual support. *Id.*

Similarly, in *Citadel*, the plaintiff claimed that "women comprise[d] the
majority of complainants in university Title IX proceedings, while most respondents
are men," but the Court concluded that "these general statistics alone do not indicate
discrimination or bias against men, as other reasons unrelated to bias may explain
the disparity." 2023 WL 3944370, at *4. To support his claim, the plaintiff needed
more that general statistic but facts showing that "he experienced such particularized
discrimination." *Id.*; *see also Univ. of Denver*, 952 F.3d at 1193-94 (rejecting
substantial disparities in the gender composition of complainants as compared to
respondents and reasoning that they could be "explained by an array of alternative
nondiscriminatory possibilities" (quotations omitted)).

Here too, there are no fact allegations showing gender bias. The Complaint
includes no information to support Plaintiff's beliefs about UNC-CH's supposedly
gender-biased process. And Plaintiff fails to tie these generalized allegations to
anything that actually happened to him during UNC-CH's process. For example,
there are no allegations that any Defendant made any gendered statement to Plaintiff.
And UNC-CH's policies use gender-neutral language. (*See* ECF 13-1, ECF 13-2,
ECF 13-3); *see also Dillow*, 2023 WL 2320765, at *13.

Though Plaintiff inserts "gender" as the explanation for everything he disagrees with about UNC-CH's process, (*see, e.g.*, Compl. ¶405), he cannot use conclusory allegations or his personal beliefs to make gender a plausible explanation for those outcomes. He has not shown that he was investigated or disciplined *because of* his gender, and therefore he fails to state a Title IX claim.

## III. Plaintiff's Breach of Contract Claim Against UNC-CH Should Be Dismissed.

Plaintiff asserts a breach of contract claim against only UNC-CH. (Compl. at 106). This claim fails for the following reasons.

**First**, and foremost, Plaintiff's contract claim is barred by UNC-CH's federal-law sovereign immunity, often shorthanded as "Eleventh Amendment immunity." UNC-CH is an agency of the State of North Carolina and enjoys the same immunities from suit in federal court as the State. *Huang*, 902 F.2d at 1138-39. The State has not consented to suit in federal court on contract claims and thus this claim is subject to dismissal. *Hooper v. North Carolina*, 379 F. Supp. 2d 804, 812 (M.D.N.C. 2005).

The Fourth Circuit recently reaffirmed this principle in *Global Innovative Concepts, LLC v. Florida*, --- F.4th ---, 2024 WL 3033746 (4th Cir. June 18, 2024), concluding that regardless of the fact that Florida could be sued in its state courts on contract claims, it had not consented to suit on such claims in federal court. *Id.* at *4. The same analysis applies here, precluding Plaintiff's contract claim against UNC-CH. *See also Maisha v. Univ. of N.C.*, No. 1:12-CV-371, 2013 WL 1232947,

35

at *5 (M.D.N.C. Mar. 27, 2013) (dismissing contact claim against state university based on Eleventh Amendment immunity), *aff'd,* 641 F. App'x 246 (4th Cir. 2016); *Kirby v. N.C. State Univ.*, No. 5:13-CV-850-FL, 2015 WL 1036946, at *9 (E.D.N.C. Mar. 10, 2015) (same), *aff'd,* 615 F. App'x 136 (4th Cir. 2015).

**Second**, Plaintiff fails to identify any contract he entered with UNC-CH. To the extent Plaintiff relies on UNC-CH's policies, (Compl. ¶¶416-18), they do not create contractual rights. *See Rouse v. Duke Univ.*, 869 F. Supp. 2d 674, 682-83 (M.D.N.C. 2012); *Guiliani v. Duke Univ.*, No. 1:08-CV-502, 2010 WL 1292321, at *8 (M.D.N.C. Mar. 30, 2010). Additionally, Plaintiff cannot pursue a contract claim against UNC-CH based on his scholarship contract with the Thurgood Marshall College Fund. UNC-CH is not a party to that contract. (Compl. ¶¶3, 27, 419).

**Third**, to the extent Plaintiff is pursuing a claim for breach of the implied covenant of good faith and fair dealing, (*id.* ¶¶440-41), it is likewise barred by UNC-CH's immunity. Further, such claims cannot rely on the same facts as a breach of contract claim. *Cordaro v. Harrington Bank, FSB*, 260 N.C. App. 26, 38-39, 817 S.E.2d 247, 256 (2018).

For all these reasons, Plaintiff's contact claim should be dismissed.

## IV. Plaintiff's Negligent Training, Hiring, Supervision, and Retention Claim Against UNC-CH and Hall Should Be Dismissed.

Plaintiff styles his fourth count as a claim for "Negligent Training, Hiring, Supervision and Retention" against UNC-CH and Hall. (Compl. at 116). This claim

36

requires: (1) a specific tortious act by the employee; (2) the employee's incompetence or unfitness; (3) the employer's actual or constructive notice of the employee's incompetency or unfitness; and (4) injury resulting from the employee's incompetency or unfitness. *Turpin v. Charlotte Latin Sch., Inc.*, --- N.C. App. ---, 900 S.E.2d 352, 369-70 (2024); *Medlin v. Bass*, 327 N.C. 587, 591, 398 S.E.2d 460, 462 (1990). Plaintiff does not meet this standard for at least three reasons.

**First**, as a threshold matter, UNC-CH and Hall in her official capacity are protected by federal and state sovereign immunity.

Federal sovereign immunity protects UNC-CH and Hall from suit in federal court absent an exception or clear and explicit waiver. *See supra* Section III; *Huang*, 902 F.2d at 1138-39. No exception or waiver applies here. *See Dai v. Univ. of N.C., at Chapel Hill*, No. 1:02CV224, 2003 WL 22113444, at *5 (M.D.N.C. Sept. 2, 2003). Thus, federal sovereign immunity bars Plaintiff's claim against UNC-CH and Hall in her official capacity. *See also Jennings*, 240 F. Supp. 2d at 514.

State sovereign immunity also protects UNC-CH and Hall in her official capacity. These defendants are immune from negligence claims unless they are filed with the North Carolina Industrial Commission. *See* N.C.G.S. §143-291(a); *Kawai Am. Corp. v. Univ. of N.C.*, 152 N.C. App. 163, 165-66, 567 S.E.2d 215, 217-18 (2002); *Est. of Long by & through Long v. Fowler*, 378 N.C. 138, 143, 861 S.E.2d 686, 691 (2021) ("[A] suit against a State employee in that employee's official

37

capacity is a suit against the State and therefore subject to the doctrine of sovereign immunity"); *Isenhour v. Hutto*, 350 N.C. 601, 608, 517 S.E.2d 121, 126 (1999). Indeed, "the North Carolina Court of Appeals has specifically ruled that sovereign immunity protects the North Carolina university system from claims of negligent retention and supervision." *Alston v. N.C. A&T State Univ.*, 304 F. Supp. 2d 774, 783 (M.D.N.C. 2004) (collecting cases).

Therefore, federal and state sovereign immunity bars this claim against UNC-CH and Hall in her official capacity.

**Second**, Plaintiff can only bring a negligence-based claim against Hall in her individual capacity in the Industrial Commission. *See* N.C.G.S. §143-291(e). In 2023, the North Carolina General Assembly amended §143-291, adding subsection (e), which addresses negligence claims against State employees while acting in the scope of their employment. Specifically, this amendment established the Industrial Commission as the "sole and exclusive forum" for hearing *any* claim "that arises as a result of the negligence of any . . . employee . . . of the State while acting within the scope of [her] office, employment, agency, or authority." S.L. 2023-124, Sec. 31.1.(a). Put differently, "[a]ny such claims filed in any other forum arising out of or relating to the same subject matter against the . . . employee . . . of the State is precluded." *Id.*

38

Any individual-capacity claim against Hall falls squarely within subsection (e).  Hall, a State employee, served as the Associate Vice Chancellor of UNC-CH's EOC.  (Compl. ¶15).  And Plaintiff's claim arises out of alleged negligence by Hall acting within the scope of her UNC-CH employment.  (*See id*. ¶¶446, 450-51).  As such, Plaintiff cannot bring this individual-capacity claim in this Court.  The Industrial Commission is the sole and exclusive forum.

**Third**, Plaintiff's claim fails on the merits. North Carolina only recognizes a negligent hiring, retention, or supervision claim against employers—not fellow employees.  *See Braswell v. Braswell*, 330 N.C. 363, 373, 410 S.E.2d 897, 903 (1991); *see also Keith v. Health-Pro Home Care Servs., Inc.*, 381 N.C. 442, 451, 873 S.E.2d 567, 575 (2022).  Like Feeney, Froehling, and Enlow, Hall is a UNC-CH employee.  (Compl. ¶¶15-18).  Because Hall did not employ these individuals—UNC-CH did—Hall cannot be liable for negligent hiring.

Moreover, Plaintiff identifies no legal duty owed to him.  To state a negligence-based claim, there first must be "a legal duty owed by the defendant to the plaintiff."  *Keith*, 381 N.C. at 450, 873 S.E.2d at 574.  Plaintiff premises his claim on the same conduct that he complains of in his Title IX claim.  (*Compare* Compl. at 100-04, *with id.* at 120-22).  But Title IX cannot provide the basis for state-law tort claims like negligent hiring.  *See Cash*, 2018 WL 7297876, at *14; *see also Riepe v. Sarstedt, Inc.*, No. 5:09-CV-00104, 2010 WL 3326691, at *4 (W.D.N.C.

39

Aug. 23, 2010). Thus, Plaintiff's failure to allege a legal duty is fatal to his claim. *See Horne v. Cumb. Cnty. Hosp. Sys., Inc.*, 228 N.C. App. 142, 149, 746 S.E.2d 13, 19 (2013).

Accordingly, Plaintiff's claim should be dismissed with prejudice.

## V. Plaintiff's NIED Claim Against the Individual Defendants Should Be Dismissed.

Plaintiff attempts to state an NIED claim against the Individual Defendants. (Compl. at 120). To state an NIED claim, Plaintiff must allege "that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . . , and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Johnson v. Ruark Obstetrics & Gynecology Assocs.*, P.A., 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). Severe emotional distress means an "emotional or mental disorder . . . which may be generally recognized and diagnosed by professionals trained to do so." *Id.* And that distress must be the foreseeable, proximate result of the defendant's negligence. *Id.* Here, Plaintiff's claim fails for many of the same reasons his negligent hiring, supervision, and retention claim fails.

**First**, Plaintiff's claim against the official-capacity Individual Defendants is barred by federal and state sovereign immunity. *See supra* Sections III, IV.

40

**Second**, Plaintiff's claim against the individual-capacity Individual Defendants is precluded from proceeding in this Court under N.C.G.S. §143-291(e) and can only be pursued in the Industrial Commission. *See supra* Section IV.

**Third**, Plaintiff fails to state an NIED claim. Plaintiff again neglects to allege that any Individual Defendant owed him a duty. *Id.*

Additionally, Plaintiff's claim fails because it is predicated on intentional, not negligent, conduct. (*See* Compl. ¶¶461-62). For example, Plaintiff alleges that Defendants' conduct was intentional, malicious, and discriminatory, (Compl.¶¶460, 462), mirroring his Title IX allegations, (*see, e.g.*, *id.* ¶¶386-91). But discriminatory conduct is "inherently intentional," *see Thomas v. N. Telecom, Inc.*, 157 F. Supp. 2d 627, 637 (M.D.N.C. 2000), and intentional conduct cannot support an NIED claim as a matter of law, *Horne*, 228 N.C. App. at 149, 746 S.E.2d at 19 (citing *Sheaffer v. Cnty. of Chatham*, 337 F. Supp. 2d 709, 734 (M.D.N.C. 2004))

This claim also fails because Plaintiff's allegations of severe emotional distress are conclusory. (*See* Compl. ¶¶462-67). Plaintiff merely declares that he has suffered severe emotional distress without supporting facts, and there are no allegations that Plaintiff has, in fact, been diagnosed with a condition. Without allegations denoting the type, manner, or degree of emotional distress, Plaintiff cannot state an NIED claim. *Horne*, 228 N.C. App. at 149, 746 S.E.2d at 20; *Holleman v. Aiken*, 193 N.C. App. 484, 502, 668 S.E.2d 579, 591 (2008).

41

For all these reasons, Plaintiff's NIED claim is subject to dismissal.

## VI.    Plaintiff's IIED Claim Against the Individual Defendants Should Be Dismissed.

Plaintiff also alleges an IIED claim against the Individual Defendants. (Compl. at 123).  To state a claim for IIED, Plaintiff must allege: "(1) extreme and outrageous conduct by the defendant, (2) which is intended to cause and does in fact cause, (3) severe emotional distress." *Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992) (quotation marks and citation omitted).  The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Johnson v. Colonial Life & Accident Ins. Co.*, 173 N.C. App. 365, 373, 618 S.E.2d 867, 872 (2005) (internal quotation marks omitted).  North Carolina law "has set a 'high threshold' to satisfy" this requirement.  *Turner v. Thomas*, 369 N.C. 419, 427, 749 S.E.2d 439, 446 (2016) (citation omitted).  Whether conduct is extreme and outrageous is a question of law.  *Johnson v. Bollinger*, 86 N.C. App. 1, 6, 356 S.E.2d 378, 381 (1987).  Here, again, Plaintiff's claim fails.

**First**, any official-capacity claim is barred by federal sovereign immunity. *See supra* Section III.  Likewise, state sovereign immunity bars intentional tort claims.  *White v. Trew*, 366 N.C. 360, 363, 736 S.E.2d 166, 168 (2013) (sovereign immunity bars an intentional tort claim against a public official in his official capacity).

42

**Second**, Plaintiff has not alleged extreme or outrageous conduct. He alleges that Defendants failed to ensure that the investigatory and adjudicatory processes were fair and objective. (*See* Compl. ¶¶469-70, 472). Even if true, these allegations do not amount to extreme and outrageous conduct that exceeds all bounds of decency. Additionally, as with Plaintiff's NIED claim, he offers only conclusory allegations of severe emotional distress and fails to allege that he suffers from any diagnosable mental condition. *See supra* Section V.

For these reasons, Plaintiff's IIED claim should be dismissed.

## VII. Plaintiff's Tortious Interference with Contract Claim Against UNC-CH and the Individual Defendants Should Be Dismissed.

Plaintiff next endeavors to allege a Tortious Interference with Contract claim against UNC-CH and the Individual Defendants. (Compl. at 125). To state a tortious interference with contract claim, Plaintiff must allege "(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff." *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988). Here, again, Plaintiff misses the mark.

**First**, Tortious Interference with Contract is an intentional tort. *See Beck v. City of Durham*, 154 N.C. App. 221, 229-30, 573 S.E.2d 183, 190 (2002).

43

Consequently, federal and state sovereign immunity bar this claim against UNC-CH and the official-capacity Individual Defendants. *See supra* Sections III, VI; *see also Kawai Am.*, 152 N.C. App. at 167, 567 S.E.2d at 218.

**Second**, Plaintiff fails to allege any intentional inducement. Plaintiff asserts that UNC-CH and the Individual Defendants *will* induce the Thurgood Marshall College Fund to cease performance of its scholarship contract with Plaintiff. (Compl. ¶¶479, 481-83). His factual allegations, however, belie any possible inducement.

Inducement requires "purposeful conduct intended to influence a third party." *KRG New Hill Place, LLC v. Springs Invs.*, LLC, No. 13 CVS 14770, 2015 WL 855664, at *5 (N.C. Bus. Ct. Feb. 27, 2015). Plaintiff fails to allege any conduct by UNC-CH or the Individual Defendants directed at the Fund to induce termination of the scholarship contract. In other words, no Defendant affirmatively directed any conduct toward the Fund. *See Inland Am. Winston Hotels, Inc. v. Crockett*, 212 N.C. App. 349, 354, 712 S.E.2d 366, 370 (2011) (finding that "induce" involves "active persuasion, request, or petition"). Without purposeful action, there can be no inducement. *Gunn v. Simpson, Schulman & Beard, LLC*, No. 11 CVS 906, 2011 WL 4431739, at *8 (N.C. Super. Sept. 23, 2011).

**Third**, even if there were inducement, Defendants acted with justification. To support his claim, Plaintiff must show that there was no motive for interference other

than malice. *Area Landscaping, L.L.C. v. Glaxo-Wellcome, Inc.*, 160 N.C. App. 520, 523, 586 S.E.2d 507, 510 (2003). But UNC-CH's policies required an investigation once Roe reported Plaintiff's sexual misconduct. (*See* ECF 13-2 at 1; ECF 13-3 at 2-4). As Defendants were acting consistent with federal law and UNC-CH's policies, there can be no malice to sustain a tortious-interference claim. *See Hubbard v. N.C. State Univ.*, 248 N.C. App. 496, 506-07, 789 S.E.2d 915, 922-23 922 (2016).

**Fourth**, Plaintiff has not alleged actual damages. In tortious-interference cases, "actual damages" involve "monetary damages or actual pecuniary harm." *Francis v. Power Plant Maint., Inc.*, 264 F. Supp. 2d 350, 356 (M.D.N.C. 2003) (citing *Burgess v. Busby,* 142 N.C. App. 393, 403, 544 S.E.2d 4, 10 (2001) (citation omitted)). Here, Plaintiff's claim is rife with speculation that the Fund "*will*" cease performance of the scholarship contract, but there are no allegations that this has actually occurred. (Compl. ¶¶481-83 (emphasis added)). Plaintiff cannot sustain his tortious-interference claim on predictions alone.

Accordingly, because UNC-CH and the Individual Defendants enjoy sovereign immunity and Plaintiff has failed to allege the requisite elements of this claim, it should be dismissed.

## VIII. Plaintiff's North Carolina Constitution Claim Against UNC-CH Should Be Dismissed.

Plaintiff's final claim is a State constitution claim against UNC-CH. (Compl. at 128). Once again, Plaintiff cannot overcome UNC-CH's federal sovereign

45

immunity.  As Defendants previously explained, under the Eleventh Amendment, the State is immune from suit in federal court unless there has been a waiver of immunity or consent to suit.  *Supra* Section III.  The State has not "waived its immunity from claims brought under the state constitution generally or under Article I, Section 19 specifically."  *Maisha*, 2013 WL 1232947, at *3.  Therefore, federal sovereign immunity bars Plaintiff's State constitution claim.

## **CONCLUSION**

For all these reasons, Plaintiff's Complaint should be dismissed in its entirety with prejudice.  His §1983 claim is barred by sovereign immunity, qualified immunity, and for failure to state a claim.  His Title IX claim is subject to dismissal for failure to state a claim.  And his state-law claims are barred by sovereign immunity and for failure to state a claim.

This the 15th day of July, 2024.

JOSHUA H. STEIN
Attorney General

/s/  *Anne Phillips Martin*
Anne Phillips Martin
Assistant Attorney General
N.C. Bar No. 48760
amartin@ncdoj.gov
North Carolina Department of Justice
PO Box 629
Raleigh, NC  27602
Tel: 919-716-6920

46

Fax: 919-716-6764
*Attorney for Defendants*


s/ *Marla Spector Bowman*
Marla Spector Bowman
N.C. Bar No. 49097
marla_bowman@unc.edu
Office of University Counsel
University of North Carolina
at Chapel Hill
123 W. Franklin St., Suite 600A
Chapel Hill, NC 27599-9105
Tel: (919) 962-1219
*Attorney for Defendant University of
North Carolina at Chapel Hill*


/s/ *Laura E. Dean*
Laura E. Dean
N.C. Bar No. 43775
ledean@northcarolina.edu
University of North Carolina
223 S. West Street, Suite 1800
Raleigh, NC 27603
Tel: (919) 962-4551
*Attorney for Defendants University of
North Carolina System, Board of
Governors of the University of North
Carolina, University of North
Carolina at Chapel Hill, and Board of
Trustees of the University of North
Carolina at Chapel Hill*

47

## CERTIFICATE OF WORD COUNT

I certify that this brief is no more than 10,500 words according to the word processing software used to prepare this document and in accordance with the parties' pending Joint Motion for Leave to Exceed the Word Count, (ECF 37).

This the 15th day of July, 2024.

/s/ *Anne Phillips Martin*
Anne Phillips Martin
*Attorney for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing **DEFENDANTS'**

**BRIEF IN SUPPORT OF MOTION TO DISMISS** with the Clerk of Court using

the CM/ECF system, which will send notification of such filing to all registered

CM/ECF users, including Plaintiff's counsel:

> Robert C. Ekstrand
> rce@ninthstreetlaw.com

This the 15th day of July, 2024.

> /s/  *Anne Phillips Martin*
> Anne Phillips Martin
> *Attorney for Defendants*