IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
JACOB DOE,                        )
                                  )
        Plaintiff,                )
                                  )
    v.                            )    1:24-cv-41
                                  )
THE UNIVERSITY OF NORTH           )
CAROLINA SYSTEM, et al.,          )
                                  )
        Defendants.               )
```

## ORDER

Before this court is Plaintiff's Motion for Reconsideration, (Doc. 22), seeking reconsideration of this court's March 14, 2024, Memorandum Opinion and Order denying Plaintiff's Motion for Preliminary Injunction, (Doc. 20). For the reasons stated herein, Plaintiff's motion will be denied.

Federal Rule of Civil Procedure 54(b) allows for any interlocutory order to "be revised at any time before the entry of a judgment." There are three circumstances in which a court may revise an interlocutory order under Rule 54(b): "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not [previously] available . . . ; or (3) to correct a clear error of law or prevent manifest injustice." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998); see also Akeva, L.L.C. v. Adidas Am., Inc., 385 F. Supp. 2d 559, 566 (M.D.N.C. 2005).

Although the Fourth Circuit has not specifically articulated the standard for evaluating a motion for reconsideration under Rule 54(b), see Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514-15 (4th Cir. 2003), district courts in the Fourth Circuit routinely look to the standards governing the reconsideration of final judgments under Rule 59(e) for guidance in considering a motion for reconsideration of an interlocutory order under Rule 54(b), see Dhruva v. CuriosityStream Inc., No. SAG-23-2265, 2024 WL 712467, at *2 (D. Md. Feb. 21, 2024); Volumetrics Med. Imaging, LLC v. Toshiba Am. Med. Sys. Inc., No. 1:05CV955, 2011 WL 6934696, at *2 (M.D.N.C. Dec. 30, 2011).

"However, when assessing a Rule 54(b) motion for reconsideration, these standards are not applied with the same strictness as when they are used under Rule 59(e)." Mobley v. Greensboro City Police Dep't, No. 1:17-cv-114, 2018 WL 6110997, at *2 (M.D.N.C. Nov. 21, 2018); accord Carlson v. Bos. Sci. Corp., 856 F.3d 320, 325 (4th Cir. 2017) ("Compared to motions to reconsider final judgments pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, Rule 54(b)'s approach involves broader flexibility to revise interlocutory orders before final judgment as the litigation develops and new facts or arguments come to light.").

"Despite this flexible approach, . . . the discretion Rule 54(b) provides is not limitless." Carlson, 856 F.3d at 325. Indeed, "such discretion is 'subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC, 899 F.3d 236, 257 (4th Cir. 2018) (quoting Off. Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coppers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003)). Motions for reconsideration "may not be used . . . to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." Pac. Ins. Co., 148 F.3d at 403; see also Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp., 402 F. Supp. 2d 617, 619 (M.D.N.C. 2005) ("A motion to reconsider is appropriate when the court has obviously misapprehended a party's position or the facts or applicable law, or when the party produces new evidence that could not have been obtained through the exercise of due diligence.").

When seeking reconsideration based on new evidence not previously available, the movant must demonstrate the following:

> (1) the evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the new evidence has been exercised; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that is likely to produce a new outcome if the case were retried.

Boryan v. United States, 884 F.2d 767, 771 (4th Cir. 1989).

Plaintiff Jacob Doe asks this court to reconsider its March 14, 2024, Memorandum Opinion and Order, (Doc. 20), denying Plaintiff's Motion for Preliminary Injunction, (Doc. 4). It is not immediately clear from Plaintiff's motion itself what the basis for reconsideration is, but Plaintiff provides an additional exhibit not previously before the court in support of his claim that he experienced gender bias in violation of Title IX. (See Doc. 23-1.) Accordingly, this court will evaluate Plaintiff's motion for reconsideration as one based on "additional evidence that was not previously available." Akeva, L.L.C., 385 F. Supp. 2d at 566.

In his motion, Plaintiff reiterates that "the record evidence and Plaintiff's largely uncontradicted verified allegations establish gender bias sufficient to establish that there is a likelihood that Plaintiff will succeed on the merits of his Title IX claim." (Doc. 23 at 1–2.) Though much of Plaintiff's brief in support of his motion restates arguments from the brief in support of his motion for preliminary

- 4 -

injunction, Plaintiff alleges that new evidence presented by his motion for reconsideration strengthens his claims on the merits. This evidence includes emails between Defendant Feeney and Jane Roe, which Plaintiff characterizes as "coach[ing] and advis[ing]" Roe about the investigation, (see id. at 5–8), and Defendant Feeney's alleged membership on the "executive board of 'Friend to Friend' a nonprofit organization whose purpose is to assist women who have been sexually assaulted or persons who have been sexually assaulted," (id. at 4 (emphasis added)). Plaintiff does not provide evidence beyond his allegation of Feeney's relationship to the "Friend to Friend" organization, but he does attach the emails between Feeney and Roe which Plaintiff alleges demonstrate gender bias against him in violation of Title IX. (See Doc. 23-1.)

Plaintiff does not state whether this evidence was available to him previously, and explains that

> [i]n the haste to prepare the pleadings, motions, and supporting evidentiary materials to obtain injunctive relief . . . undersigned counsel did not sufficiently illuminate the merits of Plaintiff's likelihood of success on Plaintiff's Title IX claim in briefing the motion for injunctive relief. For this reason, undersigned counsel respectfully requests reconsideration . . . in light of the foregoing evidence in the record.

(Doc. 23 at 16.) Based on the record before the court, Plaintiff has not met his burden of establishing that the evidence he

relies upon in his motion for reconsideration was not previously available to him.

Defendants argue that "to the extent Plaintiff is relying on additional information — the email chain and Defendant Feeney's role on a nonprofit's board — none of this information is newly discovered. It was available prior to the Court's March Order." (Doc. 27 at 5.)

First, as to the emails between Feeney and Roe, Defendants point out that they

> appear to be official records related to the Title IX investigation from UNC Chapel Hill's Equal Opportunity and Compliance Office ("EOC"). There is a header on each page that includes a UNC Chapel Hill symbol and "Advocate GME," and each page is stamped at the top right "Type: Title IX Report."

(Id. at 7.) Defendants allege that "[t]hese marks trace back to the evidence review process, which occurred prior to EOC's completion of the investigative report" and permitted Plaintiff to inspect and review any evidence collected during the investigation, including evidence not ultimately relied on by investigators in reaching a determination. (Id. at 7–8.) Based on the Amended Complaint, (Doc. 33), the investigative report was issued in the summer of 2023, (id. ¶¶ 215-16, 218), so Plaintiff would have had access to the emails attached to his motion for reconsideration "more than six months before the February 2024 Preliminary Injunction Motion hearing," (Doc. 27

- 6 -

at 8). Plaintiff did not file a reply to Defendants' response to his motion for reconsideration.

Second, with regard to Defendant Feeney's membership on the board of the "Friend to Friend" organization, Defendants allege that Plaintiff "had this information before the Court's February [2024] hearing" because "Plaintiff raised Defendant Feeney's Friend to Friend board service during the September 13, 2023 campus hearing." (Id. at 9.) Plaintiff's prior knowledge of this fact is evidenced by the transcript of that hearing which Defendants attached to their response. (See Doc. 27-1.) At the hearing, Plaintiff's counsel stated to Defendant Feeney: "I see you're on the executive board of a non-profit called Friend to Friend that assists women who have been sexually assaulted or persons who have been sexually assaulted, and you've been on that executive board or a member of that group for five years; is that true?" (Id. at 3-4.) This question by Plaintiff's counsel during the hearing demonstrates that Plaintiff had prior knowledge of or access to the evidence he now seeks to present in his motion for reconsideration.

As discussed above, Plaintiff did not file a reply to Defendants' allegations that the evidence Plaintiff asserts in his motion for reconsideration was available to him prior to this court's evaluation of Plaintiff's motion for preliminary

- 7 -

injunction. Plaintiff's own apparent explanation that the evidence was omitted from the motion for preliminary injunction in "the haste to prepare the pleadings, motions, and supporting evidentiary materials to obtain injunctive relief," (Doc. 23 at 16), corroborates Defendants' representations that the evidence was previously available to Plaintiff, but was not presented to the court until this time. Accordingly, because he fails to present new evidence that was not previously available to him, Plaintiff's motion for reconsideration must be denied.

Even if the court could consider the evidence attached to Plaintiff's motion for reconsideration as though it were not previously available to Plaintiff, Defendant Feeney's membership on the "Friend to Friend" board and her emails with Jane Roe do not demonstrate the existence of a gender bias sufficient for Plaintiff to establish that he is likely to succeed on the merits of his Title IX claim. First, as Plaintiff himself admits, "Friend to Friend" is not a gender-specific organization. Rather, "Friend to Friend" assists "persons who have been sexually assaulted." (Doc. 23 at 4.) "Friend to Friend's" own website is also largely gender-neutral, frequently using the term "survivors" to describe the people it assists.[1] It

---

[1] See, e.g., Services, Friend to Friend, https://www.friendtofriend.me/court-advocacy-and-accompaniment (last visited July 9, 2024).

- 8 -

Case 1:24-cv-00041-WO-LPA   Document 50   Filed 09/04/24   Page 8 of 11

does appear that "Friend to Friend" offers shelter services specifically for female victims of domestic violence and their children,[2] but Plaintiff fails to articulate how Defendant Feeney's membership on the "Friend to Friend" board affected the adjudication of Jane Roe's Title IX complaints against him, let alone how Defendant Feeney's board membership constituted gender bias against Plaintiff during the Title IX proceedings.

Second, the court does not agree with Plaintiff that Defendant Feeney's emails with Jane Roe "crossed the line from investigator to advocate on behalf of Roe" such that Plaintiff experienced gender bias at this early stage of the proceedings. (Doc. 23 at 13.) As Plaintiff states, it was Defendant Feeney's job as investigator to collect evidence from both Roe and Plaintiff. (Id. at 3–4.) The emails appear to be her carrying out that responsibility: Feeney confirms that she has received and is able to access the medical records provided by Roe, (Doc. 23-1 at 1, 4), asks for additional medical documentation if available, (id. at 2, 4), tells Roe who to contact with questions about medical release forms, (id. at 6), reminds Roe that Gender Violence Service Coordinators are available to assist Roe throughout the Title IX investigation process, (id. at 6; see also id. at 12), instructs Roe how to obtain needed

---

[2] See id.

evidence, (id. at 8), provides information about disclosure of health records during the Title IX process, (id. at 9), and even reminds Roe that she and Defendant Froehling "are neutral fact finders in this matter," (id. at 11). None of these communications indicate a bias in favor of Jane Roe because she is female or against Plaintiff because he is male. Rather, it appears to the court that Defendant Feeney, as the investigator tasked with collecting evidence, emailed with Roe to ensure that all available documents were collected and, when Roe asked more substantive questions or sought advice, pointed Roe towards resources to assist Roe in making decisions. These communications do not constitute gender bias and do not convince this court that Plaintiff is likely to succeed on the merits of his Title IX claim.

As discussed in the court's Memorandum Opinion and Order denying Plaintiff's motion for preliminary injunction, bias against the accused in a Title IX proceeding is not per se gender bias. See Frierson v. Shaw Univ., 674 F. Supp. 3d 224, 230 (E.D.N.C. 2023) ("[E]vidence that a university credits an alleged victim's statements and supporting evidence during a Title IX investigation does not constitute sex-based bias or sex discrimination."). Because Plaintiff has failed to elucidate a relationship between the evidence attached to his motion for

reconsideration and specific gender-based bias, his motion for reconsideration must also be denied on the merits.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Reconsideration, (Doc. 22), is **DENIED.**

This the 4th day of September, 2024.

                            /s/ William L. Osteen, Jr.             
                           United States District Judge