# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |
|---|---|
| JACOB DOE,<br><br>                Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF NORTH CAROLINA, et al.,<br><br>                Defendants. | 1:24-cv-00041-WO-LPA |

## PLAINTIFF'S OPPOSITION TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

STATEMENT OF UNDISPUTED MATERIAL FACTS ........................................................1

    A.   It is undisputed that the sexual encounter between Doe and Roe was consensual. ....................................................................................................................1

    B.   It is undisputed that *Roe* exposed *Doe* to a sexually transmitted disease that she acquired well before their encounter. .................................................................2

    C.   It is undisputed that, when UNC learned that *Roe* exposed *Doe* to an STD, UNC refused to charge Roe with exposing Doe to her STD and refused to dismiss the charge against Doe of exposing Roe to an STD. .................................................2

    D.   It is undisputed that UNC prohibited Doe from presenting evidence that Roe lied about how and when she contracted the STI, which was directly relevant to Roe's credibility and the charge still pending against Doe. ...............................4

    E.   It is undisputed that Doe was barred from cross-examining Roe and others about facts relevant to Roe's credibility and the Investigator's bias. ...................................5

    F.   It is undisputed that UNC allowed Roe to present "scientific articles" on expected behavior in response to sexual assault and refused to permit Doe to present similar articles rebutting them. .................................................................8

STANDARD OF REVIEW ...........................................................................................10

ARGUMENT ..............................................................................................................11

   I.   Defendants are not entitled to summary judgment on Plaintiff's Title IX claim. .. 11

    A.   Gender Bias under Title IX .................................................................................11

    B.   Plaintiff has forecast sufficient evidence to survive summary judgment .................14

  II.  Defendants are not entitled to summary judgment on Doe's due process claim for injunctive relief. ....................................................................................................17

CONCLUSION ...........................................................................................................20

Case 1:24-cv-00041-WO-LPA    Document 75    Filed 05/27/26    Page 2 of 23

## STATEMENT OF UNDISPUTED MATERIAL FACTS

A detailed statement of facts is set forth in the Verified Amended Complaint (ECF No. 33), which is incorporated herein by reference. The facts set out in the Amended Complaint were verified by the plaintiff in a Declaration annexed thereto, *id.* at 144; and, as such, they should be treated as a sworn testimony for purposes of the motion.

A. IT IS UNDISPUTED THAT THE SEXUAL ENCOUNTER BETWEEN DOE AND ROE WAS CONSENSUAL.

The defendants' purported "statement of undisputed facts" contains assertions that are neither undisputed nor supported by sworn testimony. For example, defendants' farcically subtitled "Plaintiff's assault on Jane Roe" section of defendants' "facts" does not cite to any affidavit or sworn testimony of Jane Roe, the plaintiff, or any other person with knowledge of the facts of the sexual encounter at issue. (Br. 4-5). The only testimony of a person with knowledge on the matter is that of the plaintiff, whose deposition and verified complaint contradicts the "facts" set out in the defendants' statement. The only admissible evidence in the record concerning the consensual nature of plaintiff's encounter with Jane Doe is the plaintiff's verified allegations in the amended complaint and his deposition testimony, which establishes that all of his sexual contact with Jane Roe was consensual. ECF 33, ¶¶ 154-165; Ex. 1 at 3-12 (Doe Dep. Tr. 83-92); Ex. 2 at 2 (Pl's Resp. to Defs' Req. for Admission Nos. 1-3).

B. IT IS UNDISPUTED THAT *ROE* EXPOSED *DOE* TO A SEXUALLY TRANSMITTED DISEASE THAT SHE ACQUIRED WELL BEFORE THEIR ENCOUNTER.

There is no dispute that Roe came to her sexual encounter with Doe carrying a sexually transmitted disease – chlamydia – and thereby knowingly or recklessly exposed Doe to that STD. Doe specifically asked Roe if she had any STDs prior to engaging in unprotected intercourse, and Roe falsely stated that she had been tested and the results were negative. ECF 33 ¶¶ 154-165 . ██████████████████████████

████████████████████████████████████████████████████████By contrast, Doe's medical records show not only that he did not have chlamydia at the time of the encounter but also that he did not have any of the antibodies that result from a prior infection. Ex. 4 at 38, 60-66, 88-94 (Enlow Dep. Tr. p. 38, Ex. 26 and 27) (Doe's complaints alleging Roe's violation of the Sexual Exploitation policy).

C. IT IS UNDISPUTED THAT, WHEN UNC LEARNED THAT *ROE* EXPOSED *DOE* TO AN STD, UNC REFUSED TO CHARGE ROE WITH EXPOSING DOE TO HER STD AND REFUSED TO DISMISS THE CHARGE AGAINST DOE OF EXPOSING ROE TO AN STD.

When UNC learned that plaintiff could not have exposed Roe to an STD and that, in fact, it was Roe who exposed plaintiff to an STD, UNC did nothing. Plaintiff filed not one but two complaints against Roe to the EOC supported by medical evidence and Roe's own false statements assuring plaintiff that she had been tested for STDs and was "clean" in order to induce plaintiff to have unprotected sex with her. Ex. 4 (Enlow Dep. Tr. p. 38, Ex. 26 and 27). UNC not only refused to dismiss the

2

charge against plaintiff, despite its factual impossibility, but also refused to *even investigate* whether Roe violated the policy – the same policy based on the same facts that its charge against plaintiff was made – the only difference being the complainant was now the male and the respondent was female. *Id.* (Enlow Dep. Tr. pp 11-25). To explain this contradictory result, Jeremy Enlow, the EOC investigator assigned to Doe's complaints testified that UNC's rationale is in the EOC's Assessment Report. Ex. 4 at 95-99 (Enlow Dep. Tr. Ex. 23 (EOC Assessment Report, June 16, 2023)). Mr. Enlow pointed to the Report's conclusion that Doe did not sufficiently allege specific facts showing that "Jane Roe knowingly or recklessly exposed [Doe] to chlamydia." *Id.* (Enlow Dep. Tr. p 20). But Doe's first complaint to EOC specifically stated:

> On or about September 1, 2022, at Hooker Field, she recklessly and/or knowingly exposed to a sexually transmitted infection when I was under the age of 18 and without my knowledge when she falsely and expressly told me she did not have any STIs and engaged in sexual contact with me and then told me on September 2, 2022 that she tested positive for chlamydia.

Ex. 4 at 45 (Enlow Dep. Tr. Ex. 27 at 1). Further, Doe submitted the results of tests showing he did not have any antibodies that are present in patients who have been infected with chlamydia, showing he had never had chlamydia. *Id.* at 60-66 (Enlow Dep. Tr. Ex. 27 pp 16-22). ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████.

3

Yet, when the EOC had all of the same evidence showing that it was *Roe* came to the sexual encounter with chlamydia, it was *Roe* who falsely assured Doe that she did not have any STDs to induce him to have unprotected sex with her, and it was *Roe* who exposed Doe to chlamydia, the EOC refused to investigate whether Roe committed the same offense that it charged Doe with on the same facts or even dismiss the charge against Doe.

D. IT IS UNDISPUTED THAT UNC PROHIBITED DOE FROM PRESENTING EVIDENCE THAT ROE LIED ABOUT HOW AND WHEN SHE CONTRACTED THE STD, WHICH WAS DIRECTLY RELEVANT TO ROE'S CREDIBILITY AND THE CHARGE STILL PENDING AGAINST DOE.

Given the obvious relevance to the Sexual Exploitation charge and Roe's credibility, one might assume that Doe would at least be able to cross-examine Roe about her false statements to the EOC about having tested "clean" for any STDs nine days before her sexual encounter with Doe. But no. UNC barred Doe from doing even that. At the opening of the hearing, the Hearing Officer ruled that Doe was barred from using his complaints against Roe – or the supporting evidence and interview he provided to the EOC – in the proceedings against him. Ex. 5 at 2-3 (Hr'g Tr. vol. 1 at 18-19).

4

E. IT IS UNDISPUTED THAT DOE WAS BARRED FROM CROSS-EXAMINING ROE AND OTHER WITNESSES ABOUT FACTS RELEVANT TO ROE'S CREDIBILITY AND THE INVESTIGATOR'S BIAS.

In addition to Roe's false statements about the etiology of her STD, Doe was barred from confronting her about other false claims she made concerning her sexual encounter with Doe. For example:

- Doe was barred from cross-examining witnesses and presenting evidence of Roe's contemporaneous behavior ██████████████████████████████ ████████████████████ Ex. 5 at 2 (Hr'g. Tr. vol. 1 p 18, ll. 7-20). The Hearing Officer ruled this to be irrelevant, but the evidence was relevant to Doe's defense, which was not prohibited by any policy or procedure and was based on medical evidence for which Roe had waived her privilege. Moreover, Roe volunteered statements and explanations related to her mental health and behaviors, thereby opening the door to cross-examination. For example, when asked why she lied to her treating physician, she claimed that she was was "scared" that "they would call the police" on her at the ER, or "that they would involuntarily commit [her]"; and yet Isaac was barred from cross-examining her on these claims. Ex. 5 at 5, 8 (Hr'g. Tr. vol. 1 p 40, ll. 19-23; 74, ll. 13-14).

- Doe was barred from cross-examining Roe about her mental health, diagnoses and her compliance with medications she was prescribed to treat them. Ex. 5 at 2 (Hr'g. Tr. vol. 1, p 19, ll. 5-18. The Hearing Officer ruled this line of questioning to be "speculative" because the medical records did not reveal the diagnoses for which Roe

was prescribed medications. *Id.* But revealing the diagnoses was the point of the questioning at step one; Doe had established that at least one of Roe's medications was commonly prescribed to treat ████████████████████████ Ex. 6 at 2-5, 24-31 (Doe's Relevance Arguments and Requests for Additions to the Record).

• Doe was barred from cross-examining Roe about her false statements to third parties that she had tested "clean", that Doe gave her chlamydia and not correcting that statement when Doe produced proof that it was medically impossible. Ex. 5 at 12-13, 21 (Hr'g. Tr. vol. 2, p 4-5; p 13 ll. 16–23). Roe's unwillingness to correct her false statements is relevant to her credibility.

• Doe was barred from cross-examining Roe about her physical response to missing three birth control pills prior to her sexual interaction with Doe or the five different accounts of how many pills she missed and when that she gave to medical professionals and the EOC. Ex. 5 at 16 (Hr'g. Tr. vol. 2, p 8, ll. 17-18). Roe opened the door to this inquiry by giving a new account at the hearing and, regardless, it was relevant to whether the physical symptoms she alleged were caused by the sexual encounter with Doe were more likely caused by her non-compliance with her medication during that time.

• Doe was barred from cross-examining Roe about whether she actually presented to Planned Parenthood concerning her alleged pregnancy as she claimed. Ex. 5 at 18-19 (Hr'g. Tr. vol. 2, p 10, l. 21 – p 11, l. 2). The Hearing Officer ruled this irrelevant;

6

but it was plainly relevant to Roe's credibility concerning her claims about becoming pregnant as a result of the sexual encounter, having positive pregnancy test results, and contraception failures. Her answer to this simple question would have been relevant to weighing the credibility of Roe's other statements including her consent to the sexual interaction.

- Doe was barred from cross-examining Investigator Feeney about her understanding of and compliance with investigator training materials to establish bias or her failure to comply with policies and regulations. Ex. 5 at 26-27 (Hr'g. Tr. vol. 3, p 29, l. 13 – p 30, l. 20).

- Doe was barred from cross-examining Investigator Feeney about her past volunteer work with a Domestic Violence Coalition. Ex. 5 at 27-28 (Hearing Tr. vol. 3, p 30 l. 21 – p 31, l. 5). This line of examination was intended to reveal the investigator's bias against respondents or in favor of complainants and the extent to which that infected the investigation. Likewise, Doe was barred from cross-examining Investigator Feeney about her then-current and long-term status as a member of the Executive Board of a non-profit, Friend to Friend, whose mission is to assist women who have been sexually assaulted. The Hearing Officer ruled this was not relevant. Ex. 5 at 28-30 (Hearing Tr. vol. 3, p 31, l. 23 – p 33, l. 9). When combined with Feeney's prior employment as a prosecutor handling domestic violence and sex crimes, and her time volunteering with the Domestic Violence Coalition in law school, Feeney's five years in

7

the leadership of Friend to Friend is part of a clear and long-standing choice to devote her time and personal efforts to assisting women who have been subjected to sexual assault. Past employment or volunteer positions for one class of parties or another do not compel a conclusion of bias in favor of that class in a Title IX matter, but evidence of that is clearly relevant to whether such a bias exists and cross-examination was Doe's only effective means means of revealing the truth of Ms. Feeney's bias.

F. IT IS UNDISPUTED THAT UNC ALLOWED ROE TO PRESENT "SCIENTIFIC ARTICLES" ON EXPECTED BEHAVIOR IN RESPONSE TO SEXUAL ASSAULT AND REFUSED TO PERMIT DOE TO PRESENT SIMILAR ARTICLES REBUTTING THEM.

After the investigation closed, Roe submitted three published articles that expressed opinions on how sexual assault victims sometimes response to sexual assault. Roe did not offer any factual basis to justify their inclusion in the record to be produced to the factfinder.

Doe also submitted published articles that provided an alternative explanation for Roe's behavior during and following the sexual encounter, and, unlike Roe, Doe provided a narrative explaining their relevance to the specific behaviors at issue. Ex. 6 at 2-5, 24-31 (Doe's Relevance Arguments and Requests for Additions to the Record).

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

These symptoms include

██████ Investigator Feeney refused to include any of these evidentiary materials in the record transmitted to the Hearing Officer, claiming, without explanation, they were not "directly related" to any issue to be determined in the hearing.  Ex. 7 at 15 (Doe's Appeal Statement).  Yet, Investigator Feeney determined, also without explanation, that Roe's articles explaining the same behaviors as "expected behaviors" following a sexual assault were "directly related" to the issues to be decided at the hearing.  *Id.*

## **STANDARD OF REVIEW**

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Id.*  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record ... or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be denied, "it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be

taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912 (1993).

## ARGUMENT

### I. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S TITLE IX CLAIM.

#### A. GENDER BIAS UNDER TITLE IX

"Title IX proscribes gender discrimination in education programs or other activities receiving federal financial assistance." *Pederson v. La. State Univ.*, 213 F.3d 858, 877 (5th Cir. 2000). "The University, as a recipient of federal funding, can be held liable for intentional discrimination on the basis of sex or for deliberate indifference to discrimination against or harassment of a student on the basis of sex." *Plummer v. Univ. of Hous.*, 860 F.3d 767, 777 (5th Cir. 2017), *as revised* (June 26, 2017). In reversing the trial court's dismissal of a Title IX claim the Court in *Schiebel v. Schoharie School District*, held that a grievance process "lacking principles of due process risks bias that in the context of sexual harassment allegations is likely to involve bias based on stereotypes and generalizations on the basis of sex." 120 F.4th 1082, 1099 (2nd Cir. 2024) (citing *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 85 Fed. Reg. 30026, 30101 (May 19, 2020).

In *Doe v. University of Denver*, 1 F.4th 822 (10th Cir. 2021), a male student filed a suit under Title IX claiming sex discrimination arising from the University's

11

investigation of sexual assault and its decision to expel him. In reversing summary judgment for the defendants, the Court relied on *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714-715 (2d Cir. 1994) and held that Title IX "bars the imposition of university discipline where [sex][sic] is a motivating factor in the decision to discipline." *Denver* at 829.

Federal courts have developed several approaches to analyze whether a university's response to alleged sexual misconduct was free of gender bias. The Second Circuit adopted the erroneous-outcome theory. Under this framework, a plaintiff must point to particular facts "sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding" and to "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Yusuf*, 35 F.3d 709, 714-715. The First and Fifth Circuit and other circuits apply *Yusuf*'s two-part test as the baseline for erroneous-outcome claims.

Also, in *Schiebel,* the Second Circuit stated that "a grievance process lacking principles of due process risks bias." *Id* at 1099. And that a process "so deficient as to constitute a sham" supports Title IX liability. *Id.* at 1089. These departures demonstrate an outcome-oriented rather than truth-seeking proceeding. *See Haidak v. University of Mass.-Amherst*, 933 F.3d 56,73-74 (1st Cir. 2019); *Klocke v. Univ. of Texas at Arlington*, 938 F.3d 204, 210 (5th Cir. 2019)

The Seventh Circuit takes a different approach to Title IX cases, asking more simply, "[D]o the alleged facts, if true, raise a plausible inference that the university

12

discriminated against [the student] on the basis of sex?" *Doe v. Purdue Univ.*, 928 F.3d 652,667-68 (7th Cir. 2019). This approach was also adopted by the Ninth Circuit. *See Schwake v. Ariz. Bd. of Regents*, 967 F.3d 940,947 (9th Cir. 2020).

In *Sheppard v. Visitors of Virginia State University*, 993 F.3d 230 (4th Cir. 2021), the Fourth Circuit acknowledged that the circuits are split on how to approach Title IX claims. *Id.* at 235. The Fourth Circuit more closely aligned its approach to Title IX claims with the Seventh Circuit but added an important distinction:

> We agree with the Seventh's Circuit's approach and see no need to deviate from the text of Title IX. In adopting this approach, however, we find no inherent problems with the erroneous outcome and selective enforcement theories identified in Yusuf. In fact, either theory, with sufficient facts, may suffice to state a plausible claim. We merely emphasize that the text of Title IX prohibits all discrimination on the basis of sex. See 20 U.S.C. § 1681(a).

*Id.* at 236. The *Sheppard* case also emphasized the importance of establishing causation. "While admittedly not yet addressed in the context of a Title IX school disciplinary proceeding, the Supreme Court and our Circuit have held that the same or similar language requires 'but-for' causation." *Sheppard,* 993 F.3d 236 (quoting *Bostock v. Clayton C'nty., Ga.*, 590 U.S. 644 (2020).

The leading erroneous-outcome and sham-process decisions discussed above were decided before the Department of Education's ("DOE") May 19, 2020, Title IX Final Rule (the "DeVos regulations"), 85 F.R. 30026 (May 19, 2020), and therefore do not interpret or apply that Rule. The Final Rule required schools receiving federal funds

to "[e]stablish procedural due process protections that must be incorporated into a recipient's grievance process to ensure a fair and reliable factual determination when a recipient investigates and adjudicates a formal complaint of sexual harassment."[1] The Final Rule was promulgated to provide a uniform, enforceable federal baseline for campus adjudications and to reduce factual error and inconsistent campus practices that had produced widely divergent and unreliable outcomes. 85 Fed. Reg. 30026, 30030–30040. The regulation imposed mandatory procedural protections that directly guard against exactly the kind of manipulation the EOC engaged in here. *See generally*, 34 C.F.R. 106.45 (*et. seq.*) (eff. July 1, 2020)[Appx. 50].[2]

B. PLAINTIFF HAS FORECAST SUFFICIENT EVIDENCE TO SURVIVE SUMMARY JUDGMENT

An application of Plaintiff's facts to the requirements of Title IX provides the causal nexus of discrimination the Fourth Circuit set out in *Sheppard*.

(1) It is undisputed that the sexual encounter between Doe and Roe was consensual and that that Roe exposed Doe to a sexually transmitted disease that she acquired before her sexual interaction with Doe. *See* discussion, *supra*, at 1-2.

(2) It is undisputed that, when UNC learned that *Roe* exposed *Doe* to an STD, UNC refused to charge Roe with exposing Doe to her STD and refused to dismiss the

---

[1] *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 85 FR 30026-01.

[2] The regulations were recently amended, effective August 1, 2024. The revised regulations contain the same or similar requirements, although the code subsection citations may be different.

charge against Doe of exposing Roe to an STD. *See* discussion, *supra*, at 2-4. This violated Title IX's presumption of non-responsibility, 34 C.F.R. §§ 106.45(b)(1)(iv), (b)(1)(i), and the requirement that investigators and decision-makers must apply neutral, evidence-based standards, 34 C.F.R. § 106.45(b)(1)(iii).

(3) It is undisputed that UNC prohibited Doe from presenting evidence that Roe lied about how and when she contracted the STI, which was directly relevant to Roe's credibility and the charge still pending against Doe. *See* discussion, *supra*, at 4. This violated Title IX's live-hearing requirements and, in particular, the cross-examination framework so credibility assessments rest on tested statements. 34 C.F.R. §106.45(b)(6)(i)–(ii).

(4) It is undisputed that Doe was barred from cross-examining witnesses about facts relevant to Roe's credibility and the EOC investigator's bias. *See* discussion, *supra*, at 4 -7. This violated Title IX's cross-examination framework so credibility assessments rest on tested statements, 34 C.F.R. §106.45(b)(6)(i)–(ii).

(5) It is undisputed that UNC allowed Roe to present "scientific articles" on expected behavior in response to sexual assault and refused to permit Doe to present similar articles rebutting them and showing the response was consistent with Roe's diagnosed mental disorders. *See* discussion, *supra*, at 7-9. This violated Title IX's the requirement that investigators and decision-makers must apply neutral, evidence-based standards, 34 C.F.R. § 106.45(b)(1)(iii), as well as Title IX's cross-examination

framework so credibility assessments can be made on tested statements, 34 C.F.R. §106.45(b)(6)(i)–(ii).

(6) External Pressure on UNC. In 2013, several complaints were filed against UNC with the Office of Civil Rights, where UNC was widely criticized for its poor handling of sexual abuse cases. ECF 33 at 76-96. "External pressure alone is not enough to state a claim that the university acted with bias in this particular case. *Rather, it provides a backdrop that, when combined with other circumstantial evidence of bias in [a student's] specific proceeding, gives rise to a plausible claim.*" *Doe v. Univ. of Denver*, 1 F.4th 822, 831 (10th Cir. 2021) (emphasis added). "External pressure on a university to demonstrate that it acted vigorously in response to complaints by female students may support an inference that a university is biased based on sex." *Doe v. Univ. of Arkansas-Fayetteville*, 974 F.3d 858, 865–66 (8th Cir. 2020). "It is precisely because procedural irregularity alone already suggests bias that even minimal evidence of sex-based pressure on the university is sufficient to establish bias on account of sex." *Menaker v. Hofstra Univ.*, 935 F.3d 20, fn. 48 (2d Cir. 2019); *see also, Denver*, 1 F.4th 822, 831 (10th Cir. 2021) (external pressure combined with other circumstantial evidence gives rise to a plausible claim).

A reasonable inference is that all of the facts documenting the University's one-sided investigation taken together establishes a prima facie case of sex discrimination.

In *Doe v. Columbia University,* in reversing the lower court's dismissal a wrongfully accused male student's Title IX claim, the Court wrote:

> [T]he Complaint alleges that during the period preceding the disciplinary hearing, there was substantial criticism of the University, . . . accusing the University of not taking seriously complaints of female students alleging sexual assault by male students. . . . [I]t is entirely plausible that the University's decision-makers and its investigator were motivated to favor the accusing female over the accused male. . . .

831 F.3rd 46, 57 (2nd Cir. 2016). "It is precisely because procedural irregularity alone already suggests bias that even minimal evidence of sex-based pressure on the university is sufficient to establish bias on account of sex." *Menaker v. Hofstra Univ.*, 935 F.3d 20, fn. 48 (2d Cir. 2019). The external pressure on UNC – taken together with the host of identified Title IX violations that all "favored the accusing female over the accused male" – create a genuine dispute of material fact for the jury to resolve.

## II. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON DOE'S DUE PROCESS CLAIM FOR INJUNCTIVE RELIEF.

The Fourth Circuit recently held that a liberty interest sufficient to trigger due process protections arises where the same university and the same employees denied the plaintiff student "a fair and adequate disciplinary proceedings . . . causing serious damage to his education, reputation, and career prospects." *Doe v. Univ. of N. Carolina Sys.*, 133 F.4th 305, 312 (4th Cir. 2025). "A plaintiff asserting a liberty interest in his reputation must show (1) a stigmatizing statement, (2) some type of dissemination, and (3) some other government action that 'alters or extinguishes one of his legal rights.'"

*Id.* at 319 (citing *Elhady v. Kable*, 993 F.3d 208, 225 (4th Cir. 2021) and quoting *Paul v. Davis*, 424 U.S. 693, 711).

Doe has satisfied this standard. Absent the court's intervention here, Doe's suspension for sexual misconduct will remain a part of his permanent educational records and will impair his ability to seek further education or employment. There is no question that a notation of a disciplinary suspension, contained in a student's educational record, implies a "serious character defect[ ] such as dishonesty or immorality." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 308 (4th Cir. 2006) (quoting *Robertson v. Rogers*, 679 F.2d 1090, 1092 (4th Cir. 1982)). The Fourth Circuit held, "this is all the more true" where the disciplinary action "is based on a finding of sexual misconduct." Doe has certainly experienced a change in status given his suspension from the university, disciplinary probation, and a permanent record of sexual assault. Therefore, Doe asserts a sufficient liberty interest sufficient to trigger due process protections. *Id.* ("Given the pejorative nature of the alleged misconduct and the severity of the actual sanction imposed, we hold that a sufficient liberty interest has been alleged.")

Because Doe has adequately alleged a protected liberty interest, the court must consider whether the injunctive relief he seeks is properly characterized as prospective. Under *Ex parte Young*, federal courts may grant prospective relief against state officials to address any ongoing violation of federal law. 209 U.S. 123 (1908). Some inflictions

of reputational damage may be fleeting and evanescent, others may evince a deep-seated and ongoing harm. The Fourth Circuit recently addressed the ongoing harm requirement in the context of UNC's sexual misconduct proceedings involving similar allegations of sexual misconduct. *Doe v. Univ. of N. Carolina Sys.*, 133 F.4th 305, 319 (4th Cir. 2025). There, the Fourth Circuit observed:

> Several of our sister circuits have held that an erroneous disciplinary record is an ongoing injury. See, e.g., Doe v. Purdue Univ., 928 F.3d 652, 666 (7th Cir. 2019) (Barrett, J.) (explaining that university student's "marred record is a continuing harm for which he can seek redress"); Flint v. Dennison, 488 F.3d 816, 825 (9th Cir. 2007) (stating that correction of university records "serve[s] the purpose of preventing present and future harm").

*Id.* The Fourth Circuit agreed with these decisions and held, "We think as well that an erroneous university record of a student's permanent expulsion for sexual misconduct inflicts an ongoing injury for which the student can seek equitable relief." *Doe v. Univ. of N. Carolina Sys.*, 133 F.4th 305, 312 (4th Cir. 2025). The only difference here is that Doe was not permanently expelled; he was suspended and barred from campus for a year. But this is a distinction without a difference in the "ongoing injury" analysis because the analysis focuses on the reputational harm of the record of sexual misconduct, not the specific duration of a student's separation from the university. See, *id.* Here, the plaintiff has a permanent record of sexual assault that will be disclosed to newspapers that will promptly publish it online and permanently mar his transcript. The stigma is the same and it is just as "ongoing" as it was in *Doe v. Univ. of N. Carolina*

*Sys.*, 133 F.4th 305, 312 (4th Cir. 2025), *Doe v. Purdue Univ.*, 928 F.3d 652, 666 (7th Cir. 2019), and *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007).

In light of the foregoing, there is a genuine dispute of material fact precluding summary judgment on Doe's due process claims for injunctive relief against the defendants.

## CONCLUSION

For all the foregoing reasons, plaintiff has forecast sufficient evidence to create a genuine dispute of material fact on his Title IX and Due Process claims. As such, the defendants' motion for summary judgment must be denied.

Respectfully submitted this 27th day of May 2026.

> EKSTRAND & EKSTRAND, LLP
> Attorneys for Plaintiff
>
> By: /s/ Robert Ekstrand
> Robert C. Ekstrand N.C. Bar. No. 26673
> 110 Swift Avenue, 2nd Floor
> Durham, North Carolina 27705
> (919) 452-4647
> rce@ninthstreetlaw.com

20

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing response brief complies with LR7.3(d)1 in that it does not exceed 6,250 words, including the body of the brief, headings and footnotes, as calculated by the word count feature of word processing software used in preparing this brief.

/s/   Robert Ekstrand
Robert C. Ekstrand

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2026, I filed the foregoing brief using the Clerk's CM/ECF system, which will provide notice to all counsel of record.

/s/   Robert Ekstrand
Robert C. Ekstrand